**19-12745**
## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

INTERNATIONAL BROTHERHOOD OF          )
TEAMSTERS, LOCAL 947                  )
                                      )
    Petitioner                 )
                                      )       On Petition for Review
  v.                               )       of NLRB Decision and
                                      )       Order of May 22, 2019
NATIONAL LABOR RELATIONS BOARD        )       Case 12-CA-094114
                                      )
    Respondent                 )
_____     )


## BRIEF OF INTERVENOR CHARGING PARTY
## MATTHEW C. BROWN IN SUPPORT OF
## PETITION TO SET ASIDE DECISION
## AND ORDER OF NLRB


Jeffrey H. Klink
Florida Bar No. 151657
Jeffrey H. Klink, P.A.
8916 South Mobley Road
Tampa, FL 33626-1509
TEL: 813.792.9076
EMAIL: jhklink@gmail.com

Counsel for Intervenor Charging Party
Matthew C. Brown

*Teamsters, Local 947 v. NLRB*, No. 19-12745                    CIP  1 of 5

### CERTIFICATE OF INTERESTED PERSONS FILED FOR
### INTERVENOR MATTHEW C. BROWN

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for intervenor-charging party-below Matthew C. Brown certifies the following persons or entities as having an interest in the outcome of this case:

1.    **Altria Group, Inc**. (shareholder in Anheuser-Busch InBev S.A./N.V.) (NYSE: MO)

2.    **Anheuser-Busch, LLC** (parent of Anheuser-Busch Brewing Properties, LLC and, according to intervenor respondent below misidentified as respondent in the Board proceedings below by petitioner union)

3.    **Anheuser-Busch Brewing Properties, LLC** (identified as former employer of Charging party Brown by intervenor respondent) ("AB")

4.    **Anheuser-Busch Companies, LLC, or Anheuser-Busch, LLC, f/k/a Anheuser-Busch, Inc**. (named defendant in Brown's federal EEO suit against his former employer)

5.    **Anheuser-Busch InBev S.A./N.V.** (parent of Anheuser-Busch, LLC) (NYSE: BUD, OTC: BUDFF)

6.    **Baptiste, Robert M.** (outside counsel for the International union petitioner)

7.    **Baptiste & Wilder, P.C.** (law firm for International union petitioner)

*Teamsters, Local 947 v. NLRB*, No. 19-12745                    CIP  2 of 5

## CERTIFICATE OF INTERESTED PERSONS FILED FOR
## INTERVENOR MATTHEW C. BROWN

8.    **Benton, Nancy A. Beyer** (McGuire Woods attorney who initially responded to EEOC about charge filed by Brown)

9.    **Brown, Matthew C.** (party who filed ULP charge below and and plaintiff in federal EEO suit against his former employer, AB)

10.    **Cairns, Scott** (McGuire Woods attorney when firm was apparently initially retained to respond to Brown's EEOC charge)

11.    **Cates, The Honorable William Nelson** (ALJ in Board proceedings)

12.    **Cohen, Honorable David** (current Regional Director, NLRB Region 12)

13.    **Diaz, Honorable Margaret J** (former Regional Director, NLRB Region 12 who issued complaint on charge filed by Matthew Brown)

14.    **Egan, Jr., Joseph** (counsel for petitioner union in Board proceedings)

15.    **Egan, Lev, Lindstrom & Siwica, P.A.** (law firm of which counsel for  union in Board proceedings below and as petitioner before this Court are members)

16.    **Emanuel, William J.** (Board Member)

17.    **Habenstreit, David** (Acting Deputy Associate General Counsel and appellate counsel for Board)

18.    **International Brotherhood of Teamsters, Local 947** (petitioner union)

### CERTIFICATE OF INTERESTED PERSONS FILED FOR INTERVENOR MATTHEW C. BROWN

19.    **International Brotherhood of Teamsters, Brewery, and Soft Drink Workers Conference** (party-in-interest union in Board proceedings below)

20.    **Jackson Lewis LLP** (law firm representing defendant in Brown's federal suit, during EEOC's handling of Brown's administrative charges, and representing AB, intervenor in this Court and respondent employer in the Board proceedings)

21.    **Johnson, Peter C** (in-house associate general counsel for AB and initially represented AB in response to one of Brown's charges filed with EEOC)

22.    **Jeffrey H. Klink, P.A.** (firm representing Brown: in his federal court case, charging party in Board proceedings below, and as intervenor in this Court)

23.    **Klink, Jeffrey H.** (attorney for Brown: in his federal suit, charging party in Board proceedings below, and intervenor in this Court)

24.    **Lev, Tobe M.** (counsel for petitioner union)

25.    **Maldonado, Marinelly** (counsel for Board's Acting General Counsel in Board proceedings below)

26.    **Margulies, Richard N.** (attorney with Jackson Lewis who represented AB in responding to Brown's EEOC charges and represents AB in Brown's federal suit)

27.    **McFerran, Lauren** (Board Member)

*Teamsters, Local 947 v. NLRB*, No. 19-12745                    CIP  4 of 5

## CERTIFICATE OF INTERESTED PERSONS FILED FOR
## INTERVENOR MATTHEW C. BROWN

28. **Ring, John F.** (Board Chairman)

29. **Robb, Peter B.** (Board's General Counsel)

30. **Schudroff, Daniel D**. (attorney with Jackson Lewis and counsel for intervenor AB in this Court and for AB in Board proceedings below)

31. **Siwica, Richard** (appellate counsel for petitioner union)

32. **Smith, Thomas Royall** (attorney, evidently now retired, with Jackson Lewis who represented respondent employer in Board proceedings below)

33. **Sorrell, Justin C.** (attorney with Jackson Lewis and co-counsel for respondent employer in Board proceedings below)

34. **Spitz, Jonathan J**. (attorney with Jackson Lewis and counsel for intervenor AB in this Court and for AB in Board proceedings below)

35. **Stock, Alice B.** (Board's Associate General Counsel)

36. **Vol, Kira Dellinger** (appellate counsel for Board)

37. **Weitz, Eric** (appellate counsel for Board)

38. **White, B. Tyler** (attorney with Jackson Lewis and co-counsel for defendant employer in Brown's federal suit)

39. **Wolfmeyer, Nicholas R** (counsel for petitioner union)

*Teamsters, Local 947 v. NLRB*, No. 19-12745                    CIP  5 of 5

## CERTIFICATE OF INTERESTED PERSONS FILED FOR
## INTERVENOR MATTHEW C. BROWN

<u>/s/Jeffrey H. Klink</u>
Jeffrey H. Klink (Fla. Bar No. 151657)
Counsel for Intervenor Charging Party
Matthew C. Brown

## STATEMENT REGARDING ORAL ARGUMENT

Intervenor-Charging-Party-Below Matthew C. Brown (Brown or Charging Party) does not request oral argument.  Brown agrees with the ALJ and NLRB below that the material facts are largely undisputed and disposition of the petition for review of the NLRB's decision controlled by issues of law or the application of law to those facts.

Brown anticipates that the initial briefs of the parties may alone provide sufficient guidance for the Court to resolve the controlling legal issues, both the constitutional issue the NLRB employed to decide the case below and the statutory issue concerning Brown's employment status that the NLRB noted but chose not to address.  However, should the Court find the initial briefs fail to provide sufficient guidance, Brown would welcome the opportunity to address (or to defer to counsel for petitioner union for addressing) the Court's concerns in supplemental briefs, at oral argument or both.

# TABLE OF CONTENTS

Certificate of Interested Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . CIP 1 of 5

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Table of Citations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Statement Regarding Adoption of Briefs of Other Parties . . . . . . . . . . . . . . . . vi

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

     I.     NLRB Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

     II.    Appellate Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement of Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     I.     Course of Proceedings and Material, Undisputed Facts . . . . . . . . . . . 1

     II.    Standard and Scope of Review of NLRB's Decision and Order . . . 12

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

     I.     THE PETITION CLAUSE DOES NOT SHIELD AB FROM
             A NLRA-ULP DEFENSE TO ITS MOTION TO
             COMPEL IN BROWN'S FEDERAL SUIT (ISSUE I). . . . . . . . . . . 14

           A.     THE PETITION CLAUSE DOES NOT APPLY
                 TO AB'S MOTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

B.    THE AGREEMENT AB SOUGHT TO
ENFORCE WAS ILLEGAL . . . . . . . . . . . . . . . . . . . . . . . . . . 18

C.    AB'S MOTION HAD AN "ILLEGAL OBJECTIVE" . . . . . . 21

D.    AB'S MOTION WAS BASELESS. . . . . . . . . . . . . . . . . . . . 23

E.    AB WAIVED THE GROUNDS FOR NLRB'S
PETITION CLAUSE HOLDING.. . . . . . . . . . . . . . . . . . . . . 25

II.    THE ALJ PROPERLY REJECTED AB'S STATUTORY
EMPLOYEE AND BARGAINING-UNIT MEMBERSHIP
EXCEPTIONS TO ULP LIABILITY (ISSUE II) . . . . . . . . . . . . . . 27

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2

Excerpts from EEOC File. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-3 to A-7

# TABLE OF CITATIONS

Pages

Cases

*Alabama Power Co. v. FCC,* 311 F.3d 1357 (11ᵗʰ Cir. 2002) . . . . . . . . . . . . . . .  12

*Beena Beauty Holding, Inc.,* 368 NLRB No. 91 (Oct. 8, 2019) . . . . . . . . . . . . . 16

*BE&K Construction Co. v. NLRB,* 536 U.S. 516,122 S. Ct. 2390 (2002). . . . . . . 16

*Bill Johnson's Restaurants v. NLRB,* 461 U.S. 731, 103 S. Ct. 2161 . . . . . .  *passim*

*Brown v. AB,* Case No. 3:12-cv-365 (M.D. Fla.)(history of proceedings) . . 3-6, 29

*Brown v. ITT Consumer Financial Corp*., 211 F.2d 1217 (11ᵗʰ Cir. 2000). . . . . . 26

*Cedars-Sinai Medical Ctr.,* 368 NLRB No. 83 (September 30, 2019) . . . . . . 19, 20

*Epic Systems Corp. v. Lewis,* 138 S. Ct. 1612 (2018) . . . . . . . . . . 13, 20, 21, 22, 29

*14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 129 S. Ct. 1456 (2009) . . . . . . . . . . 22

*Ga. Power Co. v. NLRB,* 427 F.3d 1354 (11ᵗʰ Cir. 2005) . . . . . . . . . . . . . . . . . . . 19

*Ivax Corp. v. B. Braun of Am., Inc.*, 286 F. 3d 1309 (11ᵗʰ Cir. 2002) . . . . . . . . . . 26

*Jefferson v. Upton,* 560 U.S. 284, 130 S. Ct. 2217 (2010) . . . . . . . . . . . . . . . . . . 27

*J.I. Case Co. v. NLRB,* 321 U.S. 332, 64 S. Ct. 576 (1944). . . . . . . . . . . . . . . . . 18

*Johnson v. Keybank, N.A.,* 754 F.3d 1290 (11ᵗʰ Cir. 2014) . . . . . . . . . . . . . . . . . 27

*Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 102 S. Ct. 851 (1982). . . . . . . . . . . . 15

*Litton Business Systems v. NLRB,* 501 U.S. 190, 111 S. Ct. 2215 (1991). . . . 18, 29

*Mercedes-Benz, U.S. Int'l, Inc. v. NLRB,* 838 F.3d 1128 (11th Cir. 2016) . . . . . . 12

*NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 76 S. Ct. 679 (1956). . . . . . . . . 12

*NLRB v. City Disposal Systems, Inc.,* 465 U.S. 822, 104 S. Ct. 1505 (1984) . . . . 22

*NLRB v. Goya Foods of Fla.,* 525 F.3d 1117 (11th Cir. 2008). . . . . . . . . . . . . . . 12

*NLRB v. Katz,* 369 U.S. 736, 82 S. Ct. 1107 (1962) . . . . . . . . . . . . . . . . . . . . . . . 18

*NLRB v. Local 103,* 434 U.S. 335, 98 S. Ct. 651 (1978) . . . . . . . . . . . . . . . . . . . . 12

*Roberts v. AT&T Mobility,* 877 F.3d 833 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . 17

*Scott v. AB,* No. 4:11-cv-477 (S.D. Tex. June 21, 2011)(order of dismissal),

    *aff'd per curiam,* No. 11-20542 (5th Cir. Nov. 17, 2011) . . . . . . . . . . . . . . . 5

*U.S. v. Jones,* 565 U.S. 400, 132 S. Ct. 945 (2012) . . . . . . . . . . . . . . . . . . . . . 26, 27

## Statutes and U.S. Constitution

U.S. Constitution, amend. I, Petition Clause . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. §§ 102, 103, Norris-LaGuardia Act. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

29 U.S.C. §§ 151-169, National Labor Relations Act . . . . . . . . . . . . . . . . . *passim*

29 U.S.C. § 152 (2), (3), (5), (6), (7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

29 U.S.C. § 158(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii, 6, 7, 19, 20

29 U.S.C. § 158(a)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii, 6, 7, 14, 19

29 U.S.C. § 160(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii, 6

29 U.S.C. § 160(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

29 U.S.C. § 160(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii,12

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

42 U.S.C. § 2000e *et. seq.,* Title VII, Civil Rights Act of 1964, *as amended* . . . . . 4

Fla. Stat. §§ 760.01-760.11, Florida Civil Rights Act . . . . . . . . . . . . . . . . . . . . . 4

Court Rules

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 54(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Fed. R. App. P. 4(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Treatises

1 C. Morris, *The Developing Labor Law* (2d ed. 1983) . . . . . . . . . . . . . . . . . 18, 24

## STATEMENT REGARDING ADOPTION OF OTHER BRIEFS

As of the time this brief was finalized for copying and binding, Brown had seen no other briefs from the union, employer, AB, or the NLRB. It is likely that he will agree to and adopt at least portions of the union's brief and possibly portions of the briefs filed by the NLRB or employer. At this time, he would only rely upon and adopt the reasoning and conclusions of the ALJ with respect to the employee and bargaining-unit NLRA issues and ULP findings reflected in his decision of September 10, 2013 as noted, *infra*, at 28.

-vi-

# STATEMENT OF JURISDICTION

## I. NLRB JURISDICTION

The NLRB had subject-matter jurisdiction to adjudicate the matter under review pursuant to the provisions and proscriptions of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169.  AB (an "employer" engaged in commerce within the scope and meaning of 29 U.S.C. § 152(2), (6) and (7)) sought to compel arbitration of the federal court claims of Brown (an "employee" within the scope and meaning of § 152(3)) without notice to or negotiation with Brown's union, a "labor organization" within the meaning of scope and meaning of § 152(5).   The terms of the arbitration program that AB sought to enforce against Brown differed in critical respects from those AB had negotiated with Brown's union. Brown filed an unfair labor practice (ULP) charge against AB under 29 U.S.C. § 158(a)(5), and (1) within 6 months of AB filing its motion to compel. 29 U.S.C. § 160(b).  The NLRB's Regional Director issued a complaint against AB that the employer disputed. A trial was held before an administrative law judge (ALJ) of the NLRB who sustained the complaint's charged violations. AB filed exceptions to the ALJ's decision with the NLRB which in a 2-1 decision reversed the ALJ's decision nearly six years later.

## II.    APPELLATE COURT JURISDICTION

The petitioner union has an institutional interest in the NLRB's decision that

transcends the personal interest of Brown in seeking his day in court to redress violations of his statutory rights arising from his suspension and termination. The NLRB's decision allows AB to unilaterally seek to impose and enforce an alleged agreement directly with employees in the bargaining unit it represents on an otherwise mandatory subject of bargaining. Petitions for review of NLRB decisions are not subject to the time-limitations specified in Fed. R. App. P. 4(a)(1)(B). However, the union's petition was filed July 19, 2019, within that rule's time limitations – sixty (60) days of the NLRB's decision.  The petitioner union is a "person aggrieved" by the the NLRB's decision entitled to seek review of it in the U.S. Court of Appeals within which the alleged ULP occurred.  Petitioner union timely and properly invoked the jurisdiction of this Court under 29 U.S.C. § 160(f).

## STATEMENT OF ISSUES

I.    Whether the NLRB erred as a matter of law in concluding that the First Amendment's Petition Clause rescued AB from ULP liability by moving to compel arbitration of Brown's federal court challenges to his suspension and termination under its unilaterally-adopted DRP without notice to or bargaining with the union?

II.    Whether AB can escape ULP liability as a matter of law for seeking to compel arbitration under its unilaterally-adopted arbitration procedures without notice to or bargaining with the union because Brown was not a "statutory employee" within the bargaining unit either when he applied for employment and allegedly agreed to be bound by the DRP or when AB moved to compel in Brown's federal suit?

## STATEMENT OF THE CASE

I.    PROCEEDINGS BELOW AND STATEMENT OF MATERIAL FACTS[1]

In June, 2004, Brown applied for employment with AB on a 2-page form AB used for both union and non-union positions. Brown's application reflected that he was a high school graduate, had been referred by two named employee friends, was willing to work nights, and his expected hourly pay. Page two recited his employment history and immediately above the space for his DL number and

---

[1]Unless otherwise noted the material facts are undisputed and found in the recitation of facts in the decisions of the ALJ and NLRB, the stipulations and joint exhibits submitted to the ALJ, and record of the District Court proceedings.

signature, 10 or 11 similarly pre-printed understandings or agreements including:

I AGREE THAT IF I BECOME EMPLOYED BY THE COMPANY, AND UNLESS A WRITTEN CONTRACT PROVIDES TO THE CONTRARY, ANY CLAIM I MAY HAVE AGAINST THE COMPANY WILL BE SUBJECT TO FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE COMPANY'S DISPUTE RESOLUTION PROGRAM, AND THAT ARBITRATION WILL BE THE EXCLUSIVE METHOD I WILL HAVE FOR FINAL AND BINDING RESOLUTION OF ANY SUCH CLAIM.

Several months later AB hired Brown. From his first day on the job, September 25, 2004, until his termination nearly six years later, Brown held hourly-paid positions for AB within the bargaining unit represented by the union. The DRP expressly applies only to "salaried and non-union hourly employees" and excludes "[c]laims covered under the [NLRA]." DRP at 2, 5. AB never attempted to apply its DRP to Brown until he filed his lawsuit.

On September 23, 2009, AB issued Brown a 4-week disciplinary suspension. In March of 2010, AB terminated Brown following a production/canning mistake. Both disciplinary actions were initially challenged in two non-judicial procedures.

A. Collective-Bargaining Grievance Procedures. Brown and his union grieved this discipline as without *just cause* under the 3-step grievance procedure contained in its collective-bargaining contract (CBK) with AB. The final grievance step that only the union could initiate entailed binding arbitration before a multi-plant grievance committee. Both grievances under the CBK were taken to arbitration.

-2-

Brown's suspension was upheld in December, 2009, and his termination in May, 2010. Although the CBK contains a provision prohibiting discrimination, neither grievance invoked the non-discrimination provision of the CBK or sought to raise statutory claims of racial discrimination or retaliation.

      B.    <u>Administrative Charges of Race Discrimination and Retaliation</u>. In December, 2009, Brown dual-filed an administrative charge with the EEOC and Florida Commission on Human Relations challenging his suspension as an express precursor to termination as both racially discriminatory and retaliatory. In May, 2010, he similarly dual-filed an administrative charge challenging his termination as retaliatory for having filed his charge of race discrimination over his suspension. The EEOC investigated the claims securing documentation and detailed position statements from AB that were submitted through its outside counsel. At no time during the administrative investigations did AB argue that binding arbitration under its DRP precluded the EEOC's investigation into Brown's statutory charges.[2]

      C.    <u>Federal Lawsuit</u>.

      On April 3, 2012, Brown filed a 3-count complaint and demand for jury trial

---

[2]AB submitted three detailed position statements to the EEOC between June 18, 2010 and March 8, 2011. The EEOC terminated its processing of Brown's charges on December 29, 2011, when it issued Brown right to sue notices. Copies of the first pages of AB's position statements and the EEOC's right to sue notices are contained in this brief's addendum. A-3 to A-7

in federal court in Jacksonville against AB. Case No. 3:12-cv-365. It sought legal and appropriate equitable relief under Title VII, 42 U.S.C. § 1981, and the Florida Civil Rights Act for his 4-week suspension and his termination. (DCT Doc. 1).

AB's response to the complaint was a two-pronged Rule 12(b)(1) factual motion to dismiss or to compel arbitration of under the CBK and its DRP filed June 4, 2012. (DCT Doc. 5). Except for the time-out spent by the parties on unsuccessful court-ordered mediation (DCT Doc. 20 at 4-5), the issues raised by that motion consumed all litigation in the case for over a year.

The CBK prong of AB's motion sought to satisfy the "clear and unmistakable" standard required for a CBK arbitration provision to provide the exclusive remedy for statutory claims, cobbling together language from the grievance and non-discrimination provisions of the CBK. (DCT Doc. 5). Brown argued otherwise. (DCT Doc. 6). During oral argument AB abandoned the CBK prong of its Rule 12(b)(1) motion, leaving only the DRP prong of AB's motion. (DCT Doc. 20 at 2).

The parties exhaustively briefed, submitted facts and evidence, and orally argued whether Brown could be compelled to arbitrate his statutory claims under the DRP rather than proceed with their resolution in court.[3] The issues addressed ranged

---

[3]The motions, briefs, and factual submissions of the parties and District Court's orders concerning the DRP include: DCT Doc. 5 at 6-8 (AB's motion); Doc.5-1 (affidavit of AB's local manager with attached copies of Brown's

-4-

from basic issues of contract formation (including details about the application's execution and how and why Brown and his union had no knowledge of the DRP), contractual and NLRA defenses,[4] and the DRP's express non-application to union employees.

_____

employment application, DRP Policy, and grievance procedures and non-discrimination Articles in CBK); Doc. 5-2 (Southern Dist. of Texas order of dismissal in *Scott v. AB,* No. 4:11-cv-477, and Fifth Circuit's *per curiam* affirmance, No. 11-20542); Doc. 6 at 5-19 (Brown's response); Doc. 6-1 (Brown's affidavit with hiring documents); Doc. 7 at 1-5 (AB's unopposed motion for leave to reply); Doc. 9 at 1-10 (AB's reply to Brown's response); Doc. 15 (order directing AB to provide certain documents from the *Scott v. AB* litigation and other requested information and affording Brown an opportunity to reply); Doc. 16 at 1-5 (AB's notice of compliance with order enclosing District Court and Fifth Circuit documents, Doc. 16-1 to 16-9, addressing the Court's questions and argument); Doc. 17 at 1-9 (Brown's response to Doc. 16); Doc. 18 at 1-3 (AB's motion for leave to file reply to Doc. 16); Doc. 19 at 1-2 (Brown memo opposing Doc. 18); Doc. 20 (order of February 13, 2013, ordering mediation and administrative closure of the case pending the outcome of mediation and discussing DRP issues); Doc. 26 at 1-5 (Brown's unopposed motion to reopen case with pre-ALJ Decision exhibits, Doc. 26-1 to 26-4); Doc. 28 (Brown's notice of filing ALJ's decision with decision, Doc. 28-1, and Order transferring case to Board, Doc. 28-2); Doc. 29 (Order denying motion to reopen); Doc. 30 (Brown's notice of filing AB's exceptions and brief in support of exceptions to ALJ's decision, Doc. 30-1 and 30-2); Doc. 31 (Joint notice and filing of NLRB's decision and Union's petition for review, Doc. 31-1 and 31-2); Doc. 32 (endorsed order entered *sua sponte* on Aug 12, 2019, advising parties to notify the Court when 11th Circuit enters a decision).


[4] Brown's response to AB's motion to compel mirrored the substance of his later-filed ULP charge. DCT Doc. 6 at 3-5, 8-9. Neither AB's permitted reply memo nor any subsequent memo of AB addressed the NLRA defense to AB's motion.

-5-

Several months after Brown notified the District Court that he had filed an ULP charge with the NLRB, in February, 2013, the Court ordered administrative closure of the case pending the outcome of mediation. (DCT Doc. 17 at n. 7). As subsequent court orders would confirm, resolution of the contract issues would remain "under advisement" pending decisions by the NLRB and now this Court on the NLRA issues raised by AB's motion. (DCT Doc. 29 and 32).

D.    NLRB Proceedings.

Brown filed an unfair labor practice (ULP) charge dated November 30, 2013. It claimed that AB violated 29 U.S.C. §158(a)(5) and (1) by seeking to enforce in Brown's federal lawsuit challenging his suspension and termination the alleged "contract" to be bound by the terms of the DRP. This alleged "contract" was the product of AB contracting directly with Brown. AB never provided notice to, or negotiated with the union representing hourly employees like Brown about the DRP or whether the DRP could be applied to employees within its bargaining unit. The scope, terms and effect of arbitration under the DRP differed significantly from those in the CBK. Brown's ULP charge was filed within 6 months of AB filing its federal court motion to compel arbitration. 29 U.S.C. § 160(b). The Board's Director, Region 12, issued a complaint against AB based on Brown's charge. AB wholly disputed the violations in the Board's complaint and a trial was subsequently held

-6-

before an administrative law judge (ALJ) of the NLRB.   AB's primary if not only substantive defense to the ULP complaint raised in answer to the Board's complaint and before the ALJ hinged on Brown's employee status and bargaining unit membership.  Neither in its Answer to the Board's complaint nor in its post-trial brief to the ALJ did AB raise the Petition Clause as a possible defense to ULP liability. AB argued that Brown was not a statutory employee or within the bargaining unit when AB and Brown entered into the alleged DRP agreement and ceased being an employee or member of the bargaining unit once Brown's termination had been upheld at arbitration under the CBK.

On September 10, 2013, the ALJ issued his decision sustaining the violations charged in the Board's complaint.  The ALJ rejected AB's technical procedural arguments based on alleged invalid appointments to the NLRB and general counsel positions.  Substantively, the ALJ rejected AB's statutory-employee and bargaining-unit membership arguments, and, as a consequence, concluded AB's unilateral action in adopting and attempting to enforce its DRP violated Sections 8(a)(5) and (1) of the NLRA. The ALJ made no findings about the formation or enforceability under state law of the DRP agreement, recognizing those contract issues were matters for the District Court and not germane to resolution of the ULP complaint.

The ALJ's recommended order included provisions that AB cease its federal

-7-

court DRP requests, withdraw its DRP motion, and post notice that included news of that withdrawal.  The ALJ's recommended order was silent as to whether AB should be required to reimburse Brown his attorney's fees incurred for contesting the ULP-DRP motion.  That issue had been raised by him at the outset of the trial before the ALJ.  In response the ALJ indicated he was not inclined to award fees for work in other fora and viewed any fees for work done in Brown's federal suit as a matter for the District Court. (Tr. 12, lines 4-10).  In light of the ALJ's position, Brown did not revisit fee-reimbursement with the ALJ.

The General Counsel and Brown took exception to the ALJ's failure to recommend awarding Brown his fees limited to his counsel's work on the DRP issue in federal court.  The General Counsel also took exception to the ALJ's inclusion of language from the DRP program itself rather than the language from Brown's employment application regarding the DRP.

AB raised ten exceptions to the ULP findings of the ALJ.  The substantive exceptions to those findings centered on the employee and unit membership issues. AB raised no challenge to the ALJ's findings on constitutional grounds.  AB raised four exceptions to the recommended order.  Two (AB exceptions 10 and13) raise challenges to both the cease and desist and withdrawal portions of the ALJ's order based on the Petition Clause. AB's exceptions brief to the Board offers limited

-8-

argument for why its DRP motion was neither objectively baseless nor filed an improper purpose but does not specifically raise a *Bill Johnson's* n.5 argument that its motion had no "illegal objective." (AB Brief at 27).

The General Counsel filed an answering brief disputing all of AB's exceptions. It argued that the Petition Clause was no bar to the ALJ's recommended order because AB's motion to compel had an illegal objective – trying to enforce the DRP without affording the union notice or an opportunity to bargain over it. GC Brief at 12. The GC's arguments were brief, limited to *Bill Johnson's* n. 5 and did not address whether AB's motion was baseless or retaliatory. Brown also filed a limited answering brief making the points that whether there was an enforceable agreement to arbitrate was disputed and pending before the Court and that AB's exceptions contravened the NLRA's collective-bargaining framework.

In a split decision, on May 22, 2019, the NLRB concluded that under both U.S. Supreme Court and Board precedent, the Petition Clause precluded finding that AB's DRP motion constituted an ULP unless it was both baseless and retaliatory or had an illegal objective. That conclusion admittedly reached beyond the substance of AB's exceptions to the ALJ's decision and recommended order. NLRB at n.10. The NLRB majority emphasized that the ALJ had failed to cite controlling authority or explain how its ULP findings were consistent with the First Amendment. NLRB at 3-4.

-9-

Because its broadened Petition Clause resolution of the case was dispositive, it saw no need to adddress the employee or bargaining unit issues raised by AB or any other exceptions raised by any of the parties. NLRB at n.9.

1) *Illegal Objective.* The majority decision discusses Board precedent for its conclusion that "the enforcement of a ... contractual provision is not an illegal objective if the ... provision itself is not illegal." Based on Board precedent it construed the "illegal objective" requirement of *Bill Johnson's* n. 5 as involving a matter which if granted would commit the court to countenance an underlying act which would be a violation of some federal law. The majority posited that no party had alleged the DRP to be facially unlawful and that the General Counsel had cited no case in which the Board had found that a court filing had "an illegal objective" solely because the filing itself amounted to a unilateral change. The majority required an "illegal underlying act" for litigation measures to have an "illegal objective" and here found there was no "underlying act" – only the motion to compel. And that without an underlying illegal act, the litigation act itself could not be condemned as falling within the "illegal objective" exception even if that act were not baseless or retaliatory.

2) *Baseless and Retaliatory.* Absent AB's motion falling within the "illegal objective" territory of unprotected litigation acts, the majority concluded it could only

-10-

be enjoined if it were *both* baseless and retaliatory. Even though the majority claimed that neither party had argued either grounds, it concluded the motion was neither baseless nor retaliatory. The majority cited no Board or judicial precedent contrary to that relied upon by the ALJ for concluding that AB's motion constituted an ULP. Instead, the NLRB simply posited that AB's contentions on the employee and bargaining unit issues were not unreasonable. NLRB at 5-6 & n.17. In short, the NLRB offered no NLRA grounds for disputing the ALJ's ULP findings. As for whether AB's motion to compel fell with the protection of the Petition Clause, the NLRB assumed that it was because defendants also are protected by it. NLRB at 4 n.12. It further posited that AB's motion to compel arbitration fell within the scope of those protections and was not unreasonable because filed against a former employee who signed an application with DRP agreement language, whose lawsuit did not seek reinstatement, and that the law concerning arbitration agreements in the employment context was unsettled. NLRB 5-6 & n.18. It also found the motion non-retaliatory because neither party had even suggested it was motivated by anything but the obvious: AB's desire to have Brown's claims resolved by the DRP.

The majority did not just refuse to implement the ALJ's recommended injunctive relief, it reversed the findings that AB's motion to compel constituted a unilateral change ULP and dismissed the Board's complaint.

-11-

On July 19, 2019, the union filed a petition to review and set aside the NLRB's decision.   AB and Brown subsequently filed motions to intervene which were granted.

## II.    STANDARD AND SCOPE OF REVIEW OF NLRB'S DECISION

Both the ALJ and NLRB recognized that the material facts pertaining to resolution of the Board's complaint against AB are largely if not entirely undisputed. Accordingly,   the statutory "substantial evidence" review standard governing questions of fact in 29 U.S.C. § 160(f) does not control.  Credibility choices made by the ALJ are binding.  *NLRB v. Goya Foods of Fla.,* 525 F.3d 1117, 1126 (11th Cir. 2008). The courts generally defer to the NLRB's reading of the NLRA. *NLRB v. Local 103,* 434 U.S. 335, 350, 98 S. Ct. 651 (1978).  Here, however, the NLRB chose not to address the NLRA issues. Instead, it based its decision solely on its interpretation of the Petition Clause and precedent and application of those readings to the undisputed facts. Accordingly, the Court reviews the NLRB's legal conclusions *de novo. NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 112, 76 S. Ct. 679 (1956); *Cf., Alabama Power Co. v. FCC,* 311 F.3d 1357, 1367  (11th Cir. 2002)(constitutional challenges to agency orders reviewed *de novo*) .

Should the Court agree with Brown and the union that the NLRB's Petition Clause conclusion was wrong, the Court would normally remand the case for

-12-

consideration of the NLRA matters that the NLRB could possibly have based its decision on but did not. *Mercedes-Benz, U.S. Int'l, Inc. v. NLRB,* 838 F.3d 1128, 1134 (11th Cir. 2016). However, here the ALJ's decision on those issues comports with well-established Board precedent. Remanding to the Board to allow for the possibility that the NLRB could disagree with the ALJ and its own precedent would serve no purpose other than further delaying prosecution of Brown's suit. Accordingly, Brown would respectfully request that the Court address and give substantial deference to the ALJ's ruling on the NLRA issues.

## SUMMARY OF ARGUMENT

The U.S. Supreme Court recently unanimously embraced the principle that alleged individual agreements to arbitrate will not supplant the Country's labor policies and collective-bargaining framework embodied in the NLRA and the benefits and rights unions secure for their members. *Epic Systems Corp. v. Lewis,* 138 S. Ct. 1612 (2018). Under that framework, the union serves as the exclusive representative on mandatory bargaining subjects which include establishing arbitration remedies (if any) for adverse employment actions an employer takes against employees within the bargaining unit. Here the union negotiated arbitration provisions in its CBK with AB that secure an employee's rights to pursue judicial remedies for adverse employment actions that violate his statutory rights. AB has no rights under that framework to

-13-

unilaterally impose and seek to enforce alleged individual arbitration agreements that would supplant or nullify those CBK provisions. The "negotiation" and enforcement of those alleged individual arbitration agreements constitute *per se* violations of Section 8(a)(5) of the NLRA under the unilateral change and direct dealings doctrines. The NLRA defense to AB's motion to compel arbitration lay within the NLRB's primary jurisdiction to decide what constitutes an ULP or that of the District Court. Once decided by either forum, applying it to bar AB from continuing to pursue its motion to compel arbitration violates no Petition Clause rights and the NLRB erred in concluding otherwise. Accordingly, Brown respectfully asks this Court to vacate the NLRB's legally erroneous Petition Clause decision and remand the matter for it to decide whether Brown should be awarded his reasonable attorney's fees limited to his efforts in opposing AB's motion to compel arbitration under its DRP in District Court, during ULP proceedings, and in this Court.

## ARGUMENT

I.    THE PETITION CLAUSE DOES NOT SHIELD AB FROM A NLRA-ULP DEFENSE TO ITS MOTION TO COMPEL IN BROWN'S FEDERAL SUIT.

AB's motion to compel resort to its DRP was not a free-standing litigation tactic separate from the objective or legality of the agreement it sought to enforce. Brown first explains why *Bill Johnson's* Petition Clause framework does not apply

to AB's motion to compel. Even if the Court should disagree and find the *Bill Johnson's* framework applicable, Brown explains why the NLRB erred in concluding AB's motion to compel was shielded from ULP liability under Petition Clause.

A.    THE PETITION CLAUSE DOES NOT APPLY TO AB'S MOTION.

The NLRB  majority reads *Bill Johnson's* and Petition Clause jurisprudence to preclude the ALJ from finding that AB's motion violated the NLRA.    Brown respectfully disagrees.  The NLRA defense provides one of several alone sufficient grounds to deny enforcement of AB's motion.  The ULP finding  does not interfere with or restrain any state suit or even Brown's federal suit.  The ULP basis for the Board to enjoin AB's motion stands complete. No additional issues in any judicial proceeding pursued by AB must be addressed *before* AB's motion can be labeled for what it is: an ULP.  The NLRB's decision begs the question of the motion's legality.

Brown raised the NLRA defense to enforcement of the DRP in his federal court suit and the Court had concurrent jurisdiction to determine whether the claimed DRP agreement violates federal law before deciding to enforce it.  *Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 83-85, 102 S. Ct. 851 (1982) However, AB never sought to have the District Court litigate the NLRA issues.  Instead, both parties and the District Court deferred to the NLRB's primary jurisdiction to decide what is or is not an ULP.  *Id.* The Board properly exercised its jurisdiction.  There is no freestanding

-15-

Petition Clause defense for AB's motion. The ULP finding must restrain or interfere with protected litigation activity before the Clause applies. Here it simply does not.

Analysis of *Bill Johnson's* helps to explain why. In writing for the Court Justice White addressed whether the Board's cease and desist order enjoining the employer's state litigation could be upheld under the Petition Clause. The Court held that the Board's finding of unlawful retaliation was insufficient for it to enjoin the state litigation.[5] That litigation also had to be baseless. While the ALJ in that case had held a trial and concluded that the suit was baseless, the Court found that deprived the employer of his protected right to have the state court and jury resolve material issues of fact in its tort case. *Id.* at 748-749. Only if the state litigation resulted in a judgment for defendant employees, could the Board proceed to adjudicate the ULP case. For that reason, the crux of the decision, the Court concluded the Board could not enjoin the state litigation under the Petition Clause. However, the Court made clear that when an employer's litigation is plainly foreclosed as a matter of law or frivolous, the Board's ULP enjoining of it would not violate the Petition Clause. *Id.* at 747. Here there is no Petition Clause activity impacted by the ULP order.

---

[5]The absence of state litigation here also removes the federalism prong of *Bill Johnson's* holding. *BE&K Construction Co. v. NLRB,* 536 U.S. 516, 526, 122 S. Ct. 2390 (2002)

-16-

Any argument by AB that the ULP finding or recommended order interfered with a right to arbitration protected by the Petition Clause is unfounded. Agreements to arbitrate cannot deprive employees of the right to file and the Board to pursue ULP charges. *Beena Beauty Holding, Inc.,* 368 NLRB No. 91 at 1-3 (Oct. 8, 2019) Indeed claims under the NLRA are expressly excluded from the DRP and AB never argued to the contrary during the ULP proceedings.  Further, arbitration as between non-governmental parties is a matter of contract, not a procedure protected by the Petition Clause.  That Clause imposes a restriction on government, not private parties. *Roberts v. AT&T Mobility,* 877 F.3d 833, 837 (9th Cir. 2017).  And judicial enforcement or non-enforcement of a private contract, excluding racial covenants, does not constitute government action.  *Id.* at 841.  In any event, the NLRA barrier to AB's motion to compel arbitration (whether at the receiving end of an ULP ruling or one from the District Court) interferes with no Petition Clause right.  At most the NLRA defense interferes with a private remedy.  The ULP proceedings fully adjudicated the defense. The Petition Clause does not afford AB the right to continue arguing a motion after it has been properly rejected as not only without merit but unlawful.  The ALJ's ULP finding interferes with no efforts of by AB to litigate either the merits of the ULP defense or any matter in a judicial or any other governmental forum.    The Petition Clause has no application.

Should the Court nevertheless conclude that *Bill Johnson's* Petition Clause analysis applicable to AB's motion to compel, the motion still garners no protection.

### B.    THE AGREEMENT AB SOUGHT TO ENFORCE WAS ILLEGAL

The NLRB concluded it was not necessary for it to address the employee and bargaining unit issues.  Under the NLRB's construction of the Petition Clause it makes no difference whether Brown was an employee or bargaining-unit member. While disavowing any need to resolve these issues in order, it nonetheless found enough credence in AB's positions to remove its motion from the baseless category. The NLRB's position is both remarkable and unfounded.

To its credit, AB from the start of formal ULP proceedings to its briefing to the NLRB recognized that the only substantive defenses it had to ULP liability were its arguments on the statutory-employee and bargaining-unit issues.  Stated differently, if Brown was a statutory employee both when he applied for work at AB and when AB filed its DRP motion to compel, then AB at least implicitly recognized that it had no substantive defense to the ULP complaint.  Otherwise, AB sought to deal directly with a bargaining-unit member to make and enforce an arbitration agreement (a mandatory bargaining matter) that differed from the one negotiated by its exclusive representative.  Those have long been textbook NLRA prohibitions. *J.I. Case Co. v. NLRB,* 321 U.S. 332, 337-338, 64 S. Ct. 576 (1944)(direct dealing); *NLRB v.*

-18-

*Katz,* 369 U.S. 736, 82 S. Ct. 1107 (1962)(unilateral changes); *Litton Business Systems, Inc. v. NLRB,* 501 U.S. 190, 199, 111 S. Ct. 2215 (1991)(*citing* 1 C. Morris, *The Developing Labor Law* 813 (2d ed. 1983)(*mandatory* bargaining subject, collecting cases at n. 228)).

Based largely on Board precedent, the ALJ rejected AB's employee and bargaining unit arguments which compelled its ULP findings. ALJ at C.4 and 5. The ALJ's rulings were amply supported by Board precedent which makes the NLRB's decision all the more remarkable. *Cedars-Sinai Medical Center,* 368 NLRB No. 83 (September 30, 2019)(affirming ALJ on former employee's § 8(a)(1) challenges to arbitration agreement – similar in substance to AB's DRP -- that the employer required as a condition of employment in so far as the agreement could be reasonably construed by employees as barring them from filing ULP charges); *Cf. Ga. Power Co. v. NLRB,* 427 F.3d 1354 (11th Cir. 2005)(affirming Board order that unilateral adoption of grievance program through direct dealings with members that differed from the CBK procedures violated § 8(a)(5)) .

In reaching his Board-affirmed § 8(a)(1) conclusion in *Cedars,* the ALJ specifically rejected employer's affirmative defenses that:  the ULP charge was untimely because filed years after charging party had signed her agreement and she was no longer a statutory employee. *Cedars* ALJ decision at n.7. The ALJ noted the

-19-

Board had repeatedly held that maintenance of an unlawful arbitration agreement constitutes a continuing violation that in essence extends the filing period into infinity.[6] The ALJ also found that the employer violated § 8(a)(1) by filing a state suit for declaratory relief seeking to uphold the agreement's ban on class actions. However, the Board reversed that part of the ALJ's ruling, not on Petition Clause grounds but on the basis of the Supreme Court's interpretation of the scope of "concerted activities" under the NLRA as not protecting the right to pursue class actions against an individual arbitration agreement waiver. *Epic Systems Corp. v. Lewis,* 138 S. Ct. 1612 (2018).

In our case the NLRB faulted or relied upon the limited arguments of the parties (confined to the propriety of injunctive relief related to Brown's federal litigation in the ALJ's recommended order) and silence of the ALJ on the Petition Clause issues. The NLRB offers no explanation for how or why the ALJ could be faulted for failing to address an issue AB never raised. Similarly, given that AB only raised the issue for a limited purpose, faulting the parties for failing to provide more

---

[6]AB did not try to enforce its DRP against Brown throughout his active employment with AB. However, AB's exception claim that Brown signed the DRP outside the 6 month limitation for filing charges (AB Brief at 21-22) is unfounded as it admittedly maintained and enforced (Board Complaint and Answer, ¶ 6) the DRP at all material times, both when Brown allegedly agreed to be bound by it and when AB sought to enforce it.

extensive discussion appears a tad unwarranted.  The majority put those perceived failings to use. It raised, argued, and decided issues never passed upon by the ALJ or even raised let alone fully briefed by the parties after the ALJ's decision.

Had the NLRB not passed on the employee and bargaining unit issues, it would have reached the same conclusion as did the ALJ based on its own precedents and avoided the constitutional issue entirely. Instead, the majority constructed a framework for assessing the "illegal objective" of AB's federal court motion that, with all due respect, places the elephant in the room into analytical mouse holes.

### C.    AB'S MOTION HAD AN "ILLEGAL OBJECTIVE."

The NLRB majority's reasoning boils down to this: An agreement to arbitrate is not facially illegal so a motion to compel arbitration under that agreement cannot have an illegal objective unless the District Court's granting of it would commit the court to countenance an underlying illegal act.  Here, the majority reasons, there is no "underlying [illegal] act" –  only the motion to compel itself.  This reasoning fails.

In this day and age, agreements to arbitrate generally are not facially *per se* illegal.  However, context and substantive realities of such agreements do matter,  at least under the NLRA.  An employer has no right to enter into arbitration agreements directly with employees that a union represents, particularly ones that effectively nullify rights or benefits that the CBK secures.  The NLRB reasons thbat the objective

-21-

of AB's motion to compel simply parallels that of the CBK: arbitration.  However, arbitration under the CBK does not require final and binding resolution of Brown's statutory claims.  Arbitration under the DRP does.

The CBK effectively gives employees the rights to pursue statutory remedies for adverse employment actions, whether they pursue a "just cause" CBK grievance to arbitration or not.   Even the majority in *Epic* recognizes and protects the virtues of the collective-bargaining framework the NLRA establishes and the benefits unions may secure for their members under it.  Indeed, Justice Gorsuch's majority opinion notes that the union could bargain to ban arbitration entirely. 138 S. Ct. at 1624.  *Epic* can hardly be read as signaling that the Court stands willing to overturn the NLRB's *Interboro* doctrine.  *NLRB v. City Disposal Systems, Inc.,* 465 U.S. 822, 104 S. Ct. 1505 (1984)(assertion of a right grounded in a CBK constitutes protected activity).

Brown seeks to assert the CBK-secured right to pursue his statutory claims notwithstanding AB's argument that his claimed individual contract with Brown relegates him to arbitration under its DRP as the exclusive remedy.  Brown's asserted right is one secured under the policies and rights of collective-bargaining.  Under the Norris-LaGuardia Act, the claimed DRP undertaking (because it conflicts with the CBK rights) cannot be enforced.  29 U.S.C. §§ 102, 103.  *See discussion, Epic,* 138 S. Ct. at 1641-1642 & n. 9.

-22-

AB wants to replace judicial remedies and jury trials for resolving the statutory claims of its hourly-union employees with alternative final and binding procedures for resolving them.  That it was unable to achieve that result through the front door of negotiated CBK arbitration procedures, *14 Penn Plaza LLC v. Pyett,* 556 U.S. 247, 258, 129 S. Ct. 1456 (2009), does not give it a right to enter through the back door by-passing the exclusive representative entirely through claimed "application agreements" extracted directly from bargaining unit employees.

The "illegal objective" inquiry into AB's motion to compel cannot disregard the obvious – the agreement that the motion seeks to enforce.  That analysis cannot separate the realities of the agreement itself from the motion by the Board majority's *ipsa dixit* or reasoning.  With all due respect, the NLRB's reasoning glosses over the the unlawfulness of the alleged agreement AB's motion seeks to enforce.  That agreement is unlawful because it violates NLRA prohibitions against direct dealings and unilateral changes regarding a mandatory bargaining subject. For the District Court to compel arbitration under the DRP would countenance an illegal act – enforcement of an unlawful agreement.

D.    AB'S MOTION WAS BASELESS.

If *Bill Johnson's* n.5 "illegal objective" grounds for shielding an employer's litigation in another case from ULP liability are not met, the NLRB reads *Bill*

-23-

*Johnson's* as requiring that the employer's litigation be *both* baseless and retaliatory before the NLRB can enjoin it as an ULP without violating the Petition Clause. Brown submits that baselessness alone suffices to remove AB's motion from any Petition Clause protection.

Tha "retaliatory" language from *Bill Johnson's* arises from the underlying ULP that itself required proof of retaliation. The Court never questioned the sufficiency of the Board's evidence of retaliation. More importantly, the Court never had occasion to address whether retaliation was an essential requirement for enjoining state litigation if the employer's conduct constituted a ULP violation that did not require proof of any retaliatory intent.

*Bill Johnson's* holding does not support AB's and the NLRB's position that both a *retaliatory* motive and baselessness must exist before an employer's litigation can be enjoined as an ULP. Our ALJ found ULP violations that do not require proof of a retaliatory intent on the part of the employer. Direct dealings with bargaining unit members or unilateral changes violate the NLRA absent any retaliatory intent. 1 Morris, *Developing Labor Law, supra,* 563-66 (*per se* violations with at most good faith relevant). Neither the reasoning nor holding of *Bill Johnson's* supports the argument that ULP violations involving an employer's litigation can never be enjoined if the ULP itself did not entail proof of a retaliatory intent. In addition to its

-24-

illegal objective, AB's motion is not protected because baseless for other reasons.

Undoubtedly recognizing that it had no right unilaterally to impose particular arbitration procedures on employees within a union's bargaining unit, the DRP on its face and terms of the application language itself make clear it does not apply to hourly employees represented by the union.  The DRP only "applies to salaried and non-union hourly employees."   Further, the language in Brown's application makes it clear that the applicant's claimed agreement to be bound by the DRP is contingent on the absence of a "written contract provid[ing] to the contrary..." And, from the date of his hire forward, he has been governed by his union's CBK, a "written contract provid[ing] to the contrary." Down is not up no matter how many times repeated.

The language of the alleged agreement itself demonstrates that the motion is "plainly foreclosed as a matter of law or is otherwise frivolous." *Bill Johnson's,* at 747.  AB's efforts to force Brown to resort to a set of procedures for resolving his judicial claims that by their express terms have no application is not protected by reality, logic or the Petition Clause.  They are baseless.

E.    AB WAIVED THE GROUNDS FOR NLRB'S PETITION CLAUSE HOLDING.

AB raised no Petition Clause issue before the ALJ and its exceptions and challenges before the Board were limited to the ALJ's recommended order only.

-25-

While the Board's majority extended AB's arguments to preclude the ALJ's ULP findings, that extension effectively violated 29 U.S.C. § 160(e)(" No objection that has not been urged before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.").  A party's right to arbitration can be waived by its active litigation in another forum.  Further, issues can be waived or forfeited by failing to raise them in earlier proceedings.  Both doctrines apply here.

AB defended against Brown's statutory claims in the course of the EEOC's investigation into them.  AB argued to the Board, Brief at 8-11, that it refrained from applying its DRP to Brown's suspension or termination EEOC charges because until his termination was upheld by arbitration under the CBK he remained an employee and within the bargaining unit.  Yet, AB submitted evidence and three detailed position statements to the EEOC *after* Brown's termination had been upheld.  AB's failure to raise the DRP as a defense to the EEOC proceedings may alone not constitute waiver. *Brown v. ITT Consumer Financial Corp.*, 211 F.2d 1217, 1222 (11th Cir. 2000) However, here AB's Petition Clause omissions continued into both the judicial and Board proceedings. *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F. 3d 1309, 1316 (11th Cir. 2002)(2-part test for determining waiver). It never raised the argument in any federal court memoranda or motions.  Further, it never afforded the

-26-

ALJ or parties the opportunity to address any Petition Clause issues. While it raised the issue in arguing its exceptions to the Board, the arguments were confined to the propriety of the ALJ's recommended injunctive relief.[7] AB's conduct and arguments waived any right to have the NLRB reach the Petition Clause in the manner it did. *U.S. v. Jones,* 565 U.S. 400, 413, 132 S. Ct. 945 (2012); *Cf., Johnson v. Keybank, N.A.,* 754 F.3d 1290, 1292- 98 (11th Cir. 2014)(waiver of right to invoke delegation clause to decide gateway issues).

## II.    THE ALJ PROPERLY REJECTED AB'S STATUTORY EMPLOYEE AND BARGAINING-UNIT MEMBERSHIP EXCEPTIONS TO ULP LIABILITY

The NLRB decision does not question the correctness of the ALJ's rejection of AB's substantive defenses under the NLRA to ULP liability.  As discussed in the "standard of review" section, *supra* at 12-13,  normally the Court would remand for the Board's consideration of the substantive NLRA issues.  Here however the NLRB intentionally passed on those issues and the ALJ's rulings on them accord with Board and other precedent.  If the ALJ had erred on these statutory issues, the NLRB almost certainly would have reversed on those grounds, the area of its expertise and object

---

[7]Justice Brennan's concurring opinion in *Bill Johnson's* makes clear at 753: "the Boards's ability to *enjoin* prosecution of a state suit is not the measure of its ability to determine that such prosecution constitutes an unfair labor pratice or its ability to provide other remedies to vindicate federal labor policy." (*emphasis* in original)

-27-

for judicial deference. ALJ error on statutory grounds would have mooted any Petition Clause issues. Instead, it chose to wade into an area of constitutional law involving arbitration agreements fraught with perceived uncertainties and without the parties having either invited or pushed it into those waters. *Cf., Jefferson v. Upton,* 560 U.S. 284, 300, 130 S. Ct. 2217 (2010)(Scalia, J., dissenting)(raising similar criticisms of addressing issue). Remanding to the Board for consideration of possibly reversing the ALJ on these substantive NLRA issues would serve no purpose other than further delaying prosecution of Brown's federal suit.

Brown anticipates that AB will likely resurrect these arguments because for the reasons previously urged the NLRB's decision should prove indefensible on Petition Clause grounds. However, at this initial brief juncture and due to looming page limitations, Brown would rely upon the reasoning of the ALJ's decision at 13-14 save for several short additional comments.

AB's bookend arguments suffer from additional legal defects not expressly mentioned by the ALJ. The agreement end suffers from numerous contract defects (briefed and argued extensively by the parties in the Brown's lawsuit), but one in particular bears on his employee and unit membership issue. Under the express terms of the application, no agreement to be bound by the DRP could have come into existence until AB hired Brown. Stated differently, if AB had refused to hire Brown

for unlawful reasons, AB could not have argued with anything but a baseless claim that his hiring claims were subject to resolution under the DRP. AB cannot dispute that Brown was an employee and member of the bargaining unit on the day of his hire which is the earliest the DRP agreement could have come into existence.

As for Brown's status at the time of AB's motion to compel, Brown offers two additional points. First, AB argues in its brief to the Board at 13 that Brown's failure to seek reinstatement in his federal suit contributes to his having "no prospect of being returned to the bargaining unit." AB's argument is unfounded. The short prayers for relief under his two termination counts do not expressly seek reinstatement. DCT Doc. 1. However, his complaint's preliminary statement sought "appropriate equitable relief" on all counts. DCT Doc. 1 at ¶ 1. Further, under Fed. R. Civ. P. 54(c) whether Brown asked for reinstatement or not, should he prevail in his suit, the District Court could order AB to reinstate him. Brown has never taken possible reinstatement off the table. Second, AB's argument glosses over the fact that the adverse employment actions he challenges in his suit occurred when he was actively employed and a bargaining-unit member. *Cf., Litton v. NLRB,* 501 U.S. 190, 205-206, 111 S. Ct. 2215 (1991)(a post-expiration grievance can be said to arise under the CBK where it involves facts and occurrences that arose before expiration).

AB's bookend arguments could eviscerate the collective-bargaining framework embodied and protected by the NLRA with respect to union-negotiated CBK benefits. The NLRA does not allow employers to negotiate directly with union-represented employees and through claimed individual arbitration agreements replace rights or benefits secured by the CBKs that unions negotiate. Admittedly the often-espoused policies of the FAA favor arbitration when the parties agree to replace judicial remedies. However, the U.S. Supreme Court appears most unwilling to sacrifice the Nation's labor policies at the altar of mandatory individual arbitration agreements. *Epic Business Systems, supra,* 138 S. Ct. 1612 (2018).

## CONCLUSION

For all the foregoing reasons Brown respectfully asks that the Court reverse and vacate the NLRB's Petition Clause decision and remand to the Board for a determination of what attorney's fees (if any) should be awarded Brown for opposing AB's DRP motion to compel in the District Court, in ULP proceedings, and in this Court. Respectfully submitted for e-filing this 29th day of October, 2019.

*Jeffrey H. Klink*
_____
Counsel's Signature

/s/ J.H. Klink
Jeffrey H. Klink
Counsel for Intervenor Charging Party
Matthew C. Brown

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g), counsel for Brown certifies this brief complies with the type-volume limitations of Fed. R. App. P 32(a)(7)(A) and (B)(i). It does not exceed 30 pages in length and consists of 7232 words according to the WordPerfect X8 software word count, excluding those materials that do not count towards page or type-volume limitations pursuant to Fed. R. App. P. 32(f) and 11th Cir. Rule 32-4.

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced serif typeface using WordPerfect X8 in 14-point font size and Times New Roman type-style.

Counsel further certifies this brief complies with Fed. R. App. P. 32(a)(1) to 32(a)(4), 11th Cir. R. 32-1 to 32-4 and, applicable provisions of 11th Cir. R. 32, I.O.P. 1 to I.O.P 3 and pursuant to the Court's preferences in I.O.P. 4. if the printer provides spiral- or wire-binding.


/s/J.H. Klink
Jeffrey H. Klink
Counsel for Intervenor Charging Party
Matthew C. Brown


A-1

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 25(d), 11th Cir. R. 25-3, 28-1(n), 32-3 and I.O.P. 3(a) to 11th Cir. R. 32-3, the undersigned counsel certifies that he has submitted all parts of this brief for e-filing through the Court's ECF system on October 29, 2019, and that all parties, Petitioner, Respondent, and both Intervenors, all of whom have entered appearances through counsel, will be served electronically by notice to their counsel of record through the ECF system pursuant to 11th Cir. R. 25-3.

In addition, counsel certifies that pursuant to 11th Cir. R. 31-3, the original signed and six (copies) of this brief were on the above-date submitted to FedEx for courier delivery (2-day) to the Clerk's designated address for courier.

/s/J.H. Klink
Jeffrey H. Klink
Counsel for Intervenor Charging Party
Matthew C. Brown

A-2

USCA11 Case: 19-12745      Document: Date Filed: 10/29/2019   Page: 47 of 51



Representing Management Exclusively in Workplace Law and Related Litigation

| | | |
|---|---|---|
| **Jackson Lewis LLP** | ALBANY, NY | JACKSONVILLE, FL | PHOENIX, AZ |
| **245 Riverside Avenue** | ALBUQUERQUE, NM | LAS VEGAS, NV | PITTSBURGH, PA |
| **Suite 450** | ATLANTA, GA | LONG ISLAND, NY | PORTLAND, OR |
| Jacksonville, Florida 32202 | BIRMINGHAM, AL | LOS ANGELES, CA | PORTSMOUTH, NH |
| **Tel** 904 638-2655 | BOSTON, MA | MEMPHIS, TN | PROVIDENCE, RI |
| **Fax** 904 638-2656 | CHICAGO, IL | MIAMI, FL | RALEIGH-DURHAM, NC |
| www.jacksonlewis.com | CLEVELAND, OH | MINNEAPOLIS, MN | RICHMOND, VA |
| | DALLAS, TX | MORRISTOWN, NJ | SACRAMENTO, CA |
| | DENVER, CO | NEW ORLEANS, LA | SAN FRANCISCO, CA |
| | DETROIT, MI | NEW YORK, NY | SEATTLE, WA |
| | GREENVILLE, SC | ORANGE COUNTY, CA | STAMFORD, CT |
| | HARTFORD, CT | ORLANDO, FL | WASHINGTON, DC REGION |
| | HOUSTON, TX | PHILADELPHIA, PA | WHITE PLAINS, NY |

My Direct Dial: (904) 638-2660
E-mail address: margulir@jacksonlewis.com

June 18, 2010

**_Via Facsimile and U.S. Mail_**
Consuelo Nodar, Federal Investigator
US Equal Employment Opportunity Commission
Miami District Office
One Biscayne Tower
2 South Biscayne Blvd., Suite 2700
Miami, Florida 33131

> Re:   **Matthew Brown vs. Anheuser Busch**
>          **Jacksonville**
>          **EEOC Charge No.:  510-2010-00163**

Dear Ms. Nodar:

This letter is in response to the request of the Equal Employment Opportunity Commission ("EEOC" or the "Commission") for a Statement of Position from Anheuser-Busch, Inc. ("Anheuser-Busch" or the "Company") to the Charge of retaliation filed against the Company by Mr. Matthew Brown ("Mr. Brown").[1]

An equal opportunity employer, Anheuser-Busch did not retaliate against Mr. Brown in alleged violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") or the

---

[1] This letter and its contents are submitted pursuant to the confidentiality provisions of Title VII of the Civil Rights Act of 1964, as amended, including, but not limited to 42 U.S.C. §§2000e-5(b) and 2000e-(8). See also 29 CFR §1610.18 and Chapter 760 of the Florida Civil Rights Act and its applicable regulations. The use, dissemination, or distribution, in whole or in part, directly or indirectly, in whatever form, by or to persons who are neither employees nor officers of the Commission, according to its regulations, is prohibited. In this regard, should the EEOC receive any requests for access to the Commission's case file in connection with this Charge, please notify me promptly of each such request.

In responding, Anheuser-Busch does not waive any defenses, whether substantive or procedural, that it may have to the Charge, all of which are expressly reserved. Additionally, by providing information, explanation or rebuttal, Anheuser-Busch does not waive any objection to the admissibility, materiality or relevance of such information in this or in any other proceeding. Moreover, the Company reserves the right to supplement, correct, modify or change such information if it is later determined to be incomplete, inaccurate or erroneous. Finally, the information set forth in this Statement of Position is to be considered privileged, since it is being submitted to the investigative agency in response to its request for information.



Representing Management Exclusively in Workplace Law and Related Litigation

| | | | |
|---|---|---|---|
| Jackson Lewis LLP | ALBANY, NY | DETROIT, MI | MILWAUKEE, WI | PORTLAND, OR |
| 245 Riverside Avenue | ALBUQUERQUE, NM | GREENVILLE, SC | MINNEAPOLIS, MN | PORTSMOUTH, NH |
| Suite 450 | ATLANTA, GA | HARTFORD, CT | MORRISTOWN, NJ | PROVIDENCE, RI |
| Jacksonville, Florida 32202 | BALTIMORE, MD | HOUSTON, TX | NEW ORLEANS, LA | RALEIGH-DURHAM, NC |
| Tel 904 638-2655 | BIRMINGHAM, AL | INDIANAPOLIS, IN | NEW YORK, NY | RICHMOND, VA |
| Fax 904 638-2656 | BOSTON, MA | JACKSONVILLE, FL | NORFOLK, VA | SACRAMENTO, CA |
| www.jacksonlewis.com | CHICAGO, IL | LAS VEGAS, NV | OMAHA, NE | SAN DIEGO, CA |
| | CINCINNATI, OH | LONG ISLAND, NY | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| | CLEVELAND, OH | LOS ANGELES, CA | ORLANDO, FL | SEATTLE, WA |
| | DALLAS, TX | MEMPHIS, TN | PHILADELPHIA, PA | STAMFORD, CT |
| | DENVER, CO | MIAMI, FL | PHOENIX, AZ | WASHINGTON, DC REGION |
| | | | PITTSBURGH, PA | WHITE PLAINS, NY |

My Direct Dial: (904) 638-2660
E-mail address:  marguliesr@jacksonlewis.com

October 29, 2010

*Via Electronic Mail*
Consuelo Nodar, Federal Investigator
US Equal Employment Opportunity Commission
Miami District Office
One Biscayne Tower
2 South Biscayne Blvd., Suite 2700
Miami, Florida 33131

> Re:   **Matthew Brown vs. Anheuser Busch**
>       **Jacksonville**
>       **EEOC Charge No.:  510-2010-02679**

Dear Ms. Nodar:

This letter is in response to the request of the Equal Employment Opportunity Commission ("EEOC" or the "Commission") for a Statement of Position from Anheuser-Busch, Inc. ("Anheuser-Busch" or the "Company") to the Charge of retaliation filed against the Company by Mr. Matthew Brown ("Mr. Brown").[1]

An equal opportunity employer, Anheuser-Busch did not retaliate against Mr. Brown in alleged violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") or the

---

[1] This letter and its contents are submitted pursuant to the confidentiality provisions of Title VII of the Civil Rights Act of 1964, as amended, including, but not limited to 42 U.S.C. §§2000e-5(b) and 2000e-(8). See also 29 CFR §1610.18 and Chapter 760 of the Florida Civil Rights Act and its applicable regulations. In this regard, the disclosure, dissemination, or distribution, in whole or in part, directly or indirectly, in whatever form, by or to persons who are neither employees nor officers of the Commission, according to its regulations, is prohibited. In this regard, should the EEOC receive any requests for access to the Commission's case file in connection with this Charge, please notify me promptly of each such request.

In responding, Anheuser-Busch does not waive any defenses, whether substantive or procedural, that it may have to the Charge, all of which are expressly reserved. Additionally, by providing information, explanation or rebuttal, Anheuser-Busch does not waive any objection to the admissibility, materiality or relevance of such information in this or in any other proceeding. Moreover, the Company reserves the right to supplement, correct, modify or change such information if it is later determined to be incomplete, inaccurate or erroneous. Finally, the information set forth in this Statement of Position is to be considered privileged, since it is being submitted to the investigative agency in response to its request for information.

# jackson|lewis

Attorneys at Law

Jackson Lewis LLP
245 Riverside Avenue
Suite 450
Jacksonville, Florida 32202
Tel 904 638-2655
Fax 904 638-2656
www.jacksonlewis.com

| | | |
|---|---|---|
| ALBANY, NY | DETROIT, MI | MILWAUKEE, WI | PORTLAND, OR |
| ALBUQUERQUE, NM | GREENVILLE, SC | MINNEAPOLIS, MN | PORTSMOUTH, NH |
| ATLANTA, GA | HARTFORD, CT | MORRISTOWN, NJ | PROVIDENCE, RI |
| BALTIMORE, MD | HOUSTON, TX | NEW ORLEANS, LA | RALEIGH-DURHAM, NC |
| BIRMINGHAM, AL | INDIANAPOLIS, IN | NEW YORK, NY | RICHMOND, VA |
| BOSTON, MA | JACKSONVILLE, FL | NORFOLK, VA | SACRAMENTO, CA |
| CHICAGO, IL | LAS VEGAS, NV | OMAHA, NE | SAN DIEGO, CA |
| CINCINNATI, OH | LONG ISLAND, NY | ORANGE COUNTY, CA | SAN FRANCISCO, CA |
| CLEVELAND, OH | LOS ANGELES, CA | ORLANDO, FL | SEATTLE, WA |
| DALLAS, TX | MEMPHIS, TN | PHILADELPHIA, PA | STAMFORD, CT |
| DENVER, CO | MIAMI, FL | PHOENIX, AZ | WASHINGTON, DC REGION |
| | | PITTSBURGH, PA | WHITE PLAINS, NY |

My Direct Dial: (904) 638-2660
E-mail address: margulir@jacksonlewis.com

March 8, 2011

MAR 1 0 2011

EEO Miami District Office

***Via Facsimile and U.S. Mail***
Consuelo Nodar, Federal Investigator
US Equal Employment Opportunity Commission
Miami District Office
One Biscayne Tower
2 South Biscayne Blvd., Suite 2700
Miami, Florida 33131

Re: **Matthew Brown vs. Anheuser-Busch**
    **Jacksonville**
    **EEOC Charge No.: 510-2010-02679**

Dear Ms. Nodar:

The following information is provided to supplement the Statement of Position of Anheuser-Busch ("Anheuser-Busch" or the "Company") in response to the above-referenced charge of retaliation filed against the Company by Matthew Brown. We greatly appreciate the opportunity to provide this additional information, which establishes that the evidence we understand has been submitted by Mr. Brown and the union in support of his claim he was supposedly retaliated against is, in fact, not true. After reviewing the following information, we trust that the Commission will come to the only possible conclusion, that Mr. Brown was not retaliated against because he filed a charge.

**Mr. Brown's First Charge of Discrimination**

It is our understanding that the Commission is currently only investigating Mr. Brown's charge of discrimination for retaliation. As you know, Mr. Brown's first charge of discrimination (filed on November 12, 2009, EEOC Charge No. 510-2010-00163), in which he alleges that he was unfairly disciplined because of his race, has never been investigated by the Commission. In fact, Anheuser-Busch has never even been provided a copy of Mr. Brown's first charge of discrimination. Likewise, as the EEOC is also aware, the Commission has never requested that Anheuser-Busch provide a statement of position in response to Mr. Brown's first charge. Since his second charge is expressly limited to a claim of retaliation for his having filed the first charge, the underlying discipline on which Mr. Brown's first charge is based cannot be challenged as discriminatory here and must be accepted by the Commission as correct and

EEOC Form 161-B (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| To: | Matthew C. Brown | From: | Miami District Office |
|---|---|---|---|
| | | | 2 South Biscayne Blvd |
| | | | Suite 2700 |
| | | | Miami, FL 33131 |

☐ On behalf of person(s) aggrieved whose identity is
CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Consuelo Nodar, | |
| 510-2010-00163 | Investigator | (305) 808-1824 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒ More than 180 days have passed since the filing of this charge.

☐ Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

☒ The EEOC is terminating its processing of this charge.

☐ The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐ The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐ The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Nitza Santos Wright*                    12.29.11

— MALCOLM S. MEDLEY,                    *(Date Mailed)*
District Director

Enclosures(s)

cc:   <u>Respondent's Representative</u>

**Richard N. Margulies, Esquire**
JACKSON LEWIS LLP
246 Riverside Avenue
Suite 450
Jacksonville, FL 32202

A-6

EEOC Form 161-B (11/09)            U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

| | |
|---|---|
| To: Matthew C. Brown | From: Miami District Office<br>2 South Biscayne Blvd<br>Suite 2700<br>Miami, FL 33131 |

☐    On behalf of person(s) aggrieved whose identity is
      CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | Consuelo Nodar, | |
| 510-2010-02679 | Investigator | (305) 808-1824 |

*(See also the additional information enclosed with this form.)*

NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[X]   More than 180 days have passed since the filing of this charge.

☐    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will
      be able to complete its administrative processing within 180 days from the filing of this charge.

[X]   The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐    The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN
      90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge,
      you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Nitza Santos Wright*                    12-29-11

Enclosures(s)                    **MALCOLM S. MEDLEY,**              *(Date Mailed)*
                                  **District Director**

cc:        Respondent's Representative

           Richard N. Margulies, Esquire
           JACKSON LEWIS LLP
           246 Riverside Avenue
           Suite 450
           Jacksonville, FL 32202