CASE NO.: 19-12745

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

INTERNATIONAL BROTHERHOOD OF TEAMSTERS, LOCAL 947,

Petitioner,

-AND-

MATTHEW C. BROWN, AN INDIVIDUAL,

Intervenor,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent,

-AND-

ANHEUSER-BUSCH BREWING PROPERTIES, LLC,

Intervenor.

ON APPEAL FROM THE NATIONAL LABOR RELATIONS BOARD
REGION 12, CASE NO. 12-CA-094114

BRIEF OF INTERVENOR
ANHEUSER-BUSCH BREWING PROPERTIES, LLC

Jonathan J. Spitz<br>
Daniel D. Schudroff<br>
JACKSON LEWIS P.C.<br>
171 17th St., Suite 1200<br>
Atlanta, GA  30363<br>
(404) 525-8200<br>
Counsel for Intervenor<br>
Anheuser-Busch Brewing Properties, LLC

*Int'l Brotherhood, et al. v.*
*NLRB, et al.*
*Case No. 19-12745*

## I.  <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, the undersigned counsel of record certifies that the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1.  Altria Group, Inc. (NYSE: MO), Shareholder owning more than 10% of stock in Anheuser-Busch InBev S.A./N.V.

2.  Anheuser-Busch Brewing Properties, LLC, Intervenor/Employer

3.  Anheuser-Busch InBev S.A./N.V. (NYSE: BUD and OTC: BUDFF), Parent of Anheuser-Busch, LLC

4.  Anheuser-Busch, LLC, Parent of Intervenor/Employer Anheuser-Busch Brewing Properties, LLC

5.  Brown, Matthew, Intervenor/Charging Party

6.  Cates, The Honorable William Nelson, Administrative Law Judge

7.  Cohen, David, Regional Director, Respondent National Labor Relations Board ("NLRB"), Region 12

*Int'l Brotherhood, et al. v.*
*NLRB, et al.*
*Case No. 19-12745*

8.  Egan, Joseph, Attorney for Petitioner International Brotherhood of Teamsters, Local 947 ("Local 947") and International Brotherhood of Teamsters, Brewery, and Soft Drink Workers Conference ("Union")

9.  Emanuel, William, Member, Respondent NLRB

10. Habenstreit, David, Attorney for Respondent NLRB Appellate Branch

11. International Brotherhood of Teamsters, Local 947, Petitioner

12. International Brotherhood of Teamsters, Brewery, and Soft Drink Workers Conference, Petitioner

13. Klink, Jeffrey, Attorney for Intervenor/Charging Party Matthew Brown

14. Lev, Tobe, Attorney for Petitioner Union and Local 947

15. McFerran, Lauren, Member, Respondent NLRB

16. Ring, John, Chair, Respondent NLRB

17. Robb, Peter, General Counsel for Respondent NLRB

18. Schudroff, Daniel D., Attorney for Intervenor/Employer Anheuser-Busch, LLC and Anheuser-Busch Brewing Properties, LLC

19. Siwica, Richard, Attorney for Petitioner Union and Local 947

20. Spitz, Jonathan J., Attorney for Intervenor/Employer Anheuser-Busch, LLC and Anheuser-Busch Brewing Properties, LLC

21. Vol, Kira Dellinger, Attorney for Respondent NLRB Appellate Branch

22. Weitz, Eric, Attorney for Respondent NLRB Appellate Branch

*Int'l Brotherhood, et al. v.*
*NLRB, et al.*
*Case No. 19-12745*

Pursuant to Eleventh Circuit Rule 26.1, and to enable the members of this Court to evaluate possible disqualification or recusal, the undersigned counsel for Anheuser-Busch Brewing Properties, LLC hereby certifies that Anheuser-Busch Brewing Properties, LLC's parent corporation is Anheuser-Busch, LLC, whose ultimate parent corporation is Anheuser-Busch InBev S.A./N.V. (NYSE: BUD and OTC: BUDFF), a publicly held corporation. Altria Group, Inc. (NYSE: MO) is a publicly traded corporation that owns 10% or more of Anheuser-Busch InBev S.A./N.V.'s stock.

## II.    <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Intervenor-Respondent    Anheuser-Busch    Brewing    Properties,    LLC ("ABBP")[1] respectfully requests oral argument in this case given that the issues presented in this case are of great importance to all employers who have entered into arbitration agreements with their employees.

---

[1]  While this matter was pending before the National Labor Relations Board ("NLRB"), Anheuser-Busch, LLC's corporate structure changed, and the employing entity at the Jacksonville, Florida brewery became ABBP.  For ease of reference, and for purposes of this brief, references to ABBP should be construed to refer to Anheuser-Busch Brewing Properties, LLC as well as the predecessor employing entity, Anheuser-Busch, LLC.

# III.   TABLE OF CONTENTS

I.    CERTIFICATE OF INTERESTED PERSONS…………………………C-1

II.   STATEMENT REGARDING ORAL ARGUMENT……………………… i

III.  TABLE OF CONTENTS……………………………………………………ii

IV.   TABLE OF AUTHORITIES………………………………………… iv

V.    STATEMENT REGARDING ADOPTION OF OTHER BRIEFS……… viii

VI.   STATEMENT OF JURISDICTION……………………………………….. ix

VII.  STATEMENT OF THE ISSUES……………………………………........... x

VIII. STATEMENT OF THE CASE……………………………………………... 1

      A.   PROCEDURAL HISTORY……………………………………… 1

      B.   BACKGROUND FACTS………………………………………… 4

      C.   STANDARD OF REVIEW……………………………………… 6

IX.   SUMMARY OF THE ARGUMENT……………………………………… 7

X.    ARGUMENT AND CITATIONS OF AUTHORITY………………......... 8

      1.  THE NLRB PROPERLY HELD ABBP'S MOTION TO ENFORCE
          THE DRP IN THE DISTRICT COURT DID NOT HAVE AN
          ILLEGAL OBJECTIVE AND WAS NEITHER BASELESS NOR
          RETALIATORY………........................................................................ 8

          a.   The NLRB Properly Considered ABBP's First Amendment
               Right To Petition The Government Because ABBP
               Raised the Objection In Its Exceptions To The ALJ's
               Decision………………………………………………….... 9

b.    The Board Correctly Ruled ABBP's Motion to Compel
Lacked An Illegal Objective…………………………………… 11

c.    AB's Motion to Enforce the DRP Was Neither Baseless
Nor Retaliatory…………………………………………………… 22

2.  EVEN IF THE NLRB DID NOT DISMISS THE COMPLAINT ON
CONSTITUTIONAL GROUNDS, THE MOTION TO COMPEL
DID NOT OTHERWISE VIOLATE THE ACT …………………….. 23

a.    ABBP's Dispute Resolution Program Policy Was Not
Applied to Charging Party While He Was Employed……….. 24

b.    Once Brown's Termination Was Upheld, He Was No
Longer a Member of the Bargaining Unit…………………… 25

c.    ABBP's Application of Its DRP to an Individual Outside
the Bargaining Unit Is Not a Mandatory Subject of
Bargaining Because It Does Not Vitally Affect Bargaining
Unit Members………………………………………………….. 37

d.    Brown Did Not Become An Employee Within The Meaning
Of the Act By Virtue Of Applying For Employment……….. 39

XI.    CONCLUSION……………………………………………………… 41

CERTIFICATE OF COMPLIANCE WITH RULE 32(a)……………………… 43

CERTIFICATE OF SERVICE……………………………………………….. 44

# IV.    TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Advance Industrial Security,
  217 NLRB 17 (1975) ........................................................36

Allied Chemical & Alkali Workers of Am. v. Pittsburgh Plate Glass,
  404 U.S. 157 (1971)..................................................*passim*

American Express Co. v. Italian Colors Restaurant,
  570 U.S. 228 (2013)........................................................12

AT&T Mobility LLC v. Concepcion,
  563 U.S. 333 (2011)........................................................12

BE&K Constr. Co. v. NLRB,
  536 U.S. 516 (2002)........................................................11

Bill Johnson's Restaurants v. NLRB,
  461 U.S. 731 (1983)..................................................*passim*

Briggs Mfg. Co.,
  75 NLRB 569 (1947) .................................................29, 30, 31, 32

Briley Marine,
  269 NLRB 697 (1984) ....................................................27

California Motor Transport Co. v. Trucking Unlimited,
  404 U.S. 508 (1972) .......................................................11

Circuit City Stores, Inc. v. Adams,
  532 U.S. 105 (2001)........................................................12

Elevator Constructors (Long Elevator),
  289 NLRB 1095 (1988), enf'd. 902 F.2d 1297 (8th Cir. 1990) ........................17

Epic Systems Corp. v. Lewis,
  138 S.Ct. 1612 (2018).........................................13, 15, 18

Franks v. NLRB,
  742 Fed. Appx. 463 (11th Cir. 2018).................................................6, 7

Gilmer v. Interstate/Johnson Lane Corp.,
    500 U.S. 20 (1991).........................................................................12, 13

J.I. Case Co. v. NLRB,
    321 U.S. 332 (1944)..............................................................................18

Lakeland Health Care Assocs., LLC v. NLRB,
    696 F.3d 1332 (11th Cir. 2012) ............................................................6

Lambert v. Austin Ind.,
    544 F.3d 1192 (11th Cir. 2008) ..........................................................22

Little Rock Crate and Basket Co.,
    227 NLRB 1406 (1977) ..................................................................29, 32

Lockheed Shipbuilding Co.,
    278 NLRB 18 (1986) ............................................................................40

Mercedes-Benz U.S. Int'l Inc. v. Int'l Union, UAW,
    838 F.3d 1128 (11th Cir. 2016) ............................................................6

Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,
    460 U.S. 1 (1983).................................................................................12

Murphy Oil USA, Inc. v. NLRB,
    808 F.3d 1013 (5th Cir. 2015), aff'd. sub. nom, Epic Systems
    Corp. v. Lewis, 138 S. Ct. 1612 (2018).............................................15

New York Law Publishing Company,
    336 NLRB No. 93 (2001) ....................................................................36

NLRB v. Contemporary Cars, Inc.,
    667 F.3d 1364 (11th Cir. 2012) ......................................................9, 10

NLRB v. Town & Country Electric, Inc.,
    516 U.S. 85 (1995)........................................................................29, 31, 32

Oak Apparel, Inc.,
    218 NLRB 701 (1975) ..........................................................................32

Phelps Dodge Corp. v. NLRB,
    313 U.S. 177 (1941)......................................................................29, 31, 32, 33

Regional Construction Corp.,
    333 NLRB 313 (2001) ...................................................................18

S.E. Coal Co.,
    242 NLRB 547 (1979) ...................................................................37

Scott v. Anheuser-Busch, Inc.
    Case 4:11-cv-00477 .............................................................14, 18, 23

Star Tribune,
    295 NLRB 543 (1989) ...................................................23, 38, 40, 41

Stationary Engineers, Local 39,
    346 NLRB 336 (2006) ...................................................................27

United Mine Workers v. Illinois Bar Ass'n,
    389 U.S. 217 (1967)......................................................................11

United States v. Cruikshank,
    92 U.S. 542 (1876) .......................................................................11

United Techs. Corp.,
    274 NLRB 1069 (1985), enf'd, 789 F.2d 121 (2d Cir. 1986) ...........................39

Universal Camera Corp. v. NLRB,
    340 U.S. 474 (1951) .......................................................................7

Utility Vault Co.,
    345 NLRB 79 (2005) ...................................................28, 29, 38, 40

**Statutes**

9 U.S.C. § 2 ....................................................................................22

28 U.S.C. § 41 ..................................................................................ix

29 U.S.C. § 160(f)........................................................................ix, 20

42 U.S.C. § 1981 ..............................................................................36

Civil Rights Act of 1964 Title VII ..................................................1, 15

Federal Arbitration Act .........................................................12, 13, 14, 18, 22

Fair Labor Standards Act ...........................................................................13

National Labor Relations Act ...........................................................*passim*

National Labor Relations Act Section 10(e) ..............................................9

National Labor Relations Act Section 10(f) ........................................... viii

## V.    <u>STATEMENT REGARDING ADOPTION OF OTHER BRIEFS</u>

Prior to filing this brief, ABBP has not reviewed the NLRB's brief which was also to be filed this day.  However, to the extent the NLRB's brief supports the NLRB's decision to dismiss the Complaint against ABBP in its entirety, ABBP agrees with the positions the NLRB takes therein.

# VI.    <u>STATEMENT OF JURISDICTION</u>

This Court has jurisdiction pursuant to Section 10(f) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(f).  ABBP transacts business within this judicial circuit, as defined in 28 U.S.C. § 41.

# VII.   <u>STATEMENT OF THE ISSUES</u>

1.  Whether the NLRB properly dismissed the General Counsel's Complaint against ABBP.

2.  Whether the NLRB correctly held ABBP's Motion to Dismiss or Stay and Compel Arbitration ("Motion to Compel") was a lawful exercise of ABBP's First Amendment right to petition, and therefore not violative of Sections 8(a)(5) and (1) of the Act.

3.  Whether, even if the NLRB did not find ABBP's Motion to Compel was a lawful exercise of First Amendment rights, the Motion to Compel nevertheless did not violate the Act because ABBP did not have a bargaining obligation with Petitioner International Brotherhood of Teamsters Local 947 ("Local 947") when it sought to enforce the Dispute Resolution Program ("DRP") against Intervenor-Petitioner Matthew Brown ("Brown") because he was no longer an employee as defined by the Act and was no longer a bargaining unit member.

# VIII.  STATEMENT OF THE CASE

## A. Procedural History

On April 3, 2012, nearly two years after his termination was upheld by final and binding arbitration under the collective bargaining agreement ("CBA"), Brown filed a federal lawsuit in the United States District Court for the Middle District of Florida asserting claims under Title VII of the Civil Rights Act of 1964 against ABBP alleging race discrimination and retaliation ("Brown's Lawsuit").  (V. II, Jt. Ex. 11).[2]  On June 4, 2012, ABBP responded to Brown's Lawsuit by filing a Motion to Compel under the DRP.  (V. II, Jt. Ex. 12).

On December 3, 2012, Brown filed an unfair labor practice charge with Region 12 of the NLRB alleging ABBP's Motion to Compel violated the NLRA. (Union Appx. V. I, 1).[3]  On March 29, 2013, then-Regional Director Margaret Diaz, on behalf of the NLRB's General Counsel, issued a Complaint asserting ABBP violated Section 8(a)(5) and (1) of the Act by seeking to enforce the DRP in response

---

[2] Citations to the record are in the following format: citations to materials in Volume I of the NLRB's Certified list (V. I, ____); Joint Exhibits in Volume II of the NLRB's Certified List (V. II, Jt. Ex. ____); citations to the July 11, 2013 hearing transcript in Volume II, Tab 24 of Local 947's Appendix (Union Appx. V. II, Tr. at ____); citations to the Pleadings in Volume I of Local 947's Appendix (Union Appx. V. I, __at ___).

[3] "Union Appx. V. I, 1" refers to the Charge Against Employer at Tab 1 in V. I of Local 947's Appendix.

to Brown's Lawsuit without affording Local 947 notice and an opportunity to bargain about the application of the DRP to him. (Union Appx. V. I, 2).[4]

On July 11, 2013, a hearing on the Complaint was held before Administrative Law Judge ("ALJ") William N. Cates. On September 10, 2013, the ALJ issued a decision including findings of fact, conclusions of law and a recommended order and remedy. (Union Appx. V. I, 6).[5] The ALJ concluded ABBP "changed the terms and conditions of its unit employees" and, therefore, violated Sections 8(a)(5) and (1) of the Act by filing a Motion to Compel under its DRP in response to Brown's Lawsuit. (Union Appx. V. I, 6 at 10). Among other remedies, the ALJ's recommended order directed ABBP to withdraw its Motion to Compel in response to Brown's Lawsuit. (Union Appx. V. I, 6 at 11).

On October 24, 2013, ABBP timely filed exceptions to the ALJ's Decision. (Union Appx. V. I, 8).[6] ABBP's exceptions challenged, inter alia, the ALJ's findings that Brown was considered an employee under the Act at the time he filed his lawsuit and that ABBP had unilaterally changed Brown's terms and conditions of

---

[4] "Union Appx. V. I, 2" refers to the Complaint and Notice of Hearing at Tab 2 in V. I of Local 947's Appendix.

[5] "Union Appx. V. I, 6" refers to the ALJ's Decision at Tab 6 in V. I of Local 947's Appendix.

[6] "Union Appx. V. I, 8" refers to the Exceptions of Respondent Anheuser-Busch, LLC to the Decision of the ALJ at Tab 8 in V. I of Local 947's Appendix.

employment by virtue of filing the Motion to Compel.  (Union Appx. V. I, 8 at ¶¶ 1-4, 11).  Significantly, contrary to Brown's assertion in connection with the instant Petition for Review, ABBP expressly challenged the ALJ's recommended order on the ground it infringed upon its right to petition the government in violation of the United States Constitution's First Amendment.  (Union Appx. V. I, 8 at ¶ 13).

On May 22, 2019, the NLRB, via a 2-1 majority, issued its Decision and Order, reversing the ALJ's decision, and dismissing the General Counsel's Complaint in its entirety.  (Union Appx. V. II, 22).[7]  Relying upon the United States Supreme Court's precedent in Bill Johnson's Restaurants v. NLRB, 461 U.S. 731 (1983), the NLRB held ABBP's Motion to Compel constituted a lawful exercise of its First Amendment right to petition the government, did not have an illegal objective, and was neither baseless nor retaliatory.  (Union Appx. V. II, 22 at 6).  In light of the NLRB's decision to dismiss the General Counsel's Complaint on constitutional grounds, it did not pass on the ALJ's erroneous findings concerning Brown's employment status at the time he filed his lawsuit or whether there was a bargaining obligation with Local 947 in connection with seeking to enforce the DRP.  (Union Appx. V. II, 22).

---

[7] "Union Appx. V. II, 22" refers to the NLRB Decision at Tab 22 in V. II of Local 947's Appendix.

Local 947's Petition for Review ensued. Brown and ABBP, as parties in interest, subsequently filed motions to intervene, which this Court granted.

## B. <u>Background Facts</u>

On June 16, 2004, Brown applied for a job at ABBP's Jacksonville, Florida Brewery. (V. II, Jt. Ex. 14 at ¶7).[8] In his employment application, he agreed that if he became employed by ABBP, any claim against ABBP would be subject to final and binding arbitration in accordance with ABBP's DRP, so long as no written contract provided to the contrary. (V. II, Jt. Ex. 2 at 2).

Specifically, the application stated as follows:

I AGREE THAT IF I BECOME EMPLOYED BY THE COMPANY, AND UNLESS A WRITTEN CONTRACT PROVIDES TO THE CONTRARY, ANY CLAIM I MAY HAVE AGAINST THE COMPANY WILL BE SUBJECT TO FINAL AND BINDING ARBITRATION IN ACCORDANCE WITH THE COMPANY'S DISPUTE RESOLUTION PROGRAM, AND THAT ARBITRATION WILL BE THE FINAL EXCLUSIVE METHOD I WILL HAVE FOR FINAL AND BINDING RESOLUTION OF ANY SUCH CLAIM.

The DRP does not apply to claims covered under the NLRA. (V. II, Jt. Ex. 1 at 5).[9] The DRP <u>does</u> apply to non-union employees, including former employees. (V. II, Jt. Ex. 1 at 2, 23).

---

[8] "V. II, Jt. Ex. 14" refers to the Stipulation of Facts agreed to by the parties.

[9] "V. II, Jt. Ex. 1" refers to the DRP.

On September 20, 2004, ABBP offered Brown an hourly Brewing Weekender position at the Jacksonville Brewery. (V. II, Jt. Ex. 14 at ¶ 10). Five days later, on September 25, 2004, Brown commenced employment with ABBP. (V. II, Jt. Ex. 14 at ¶ 11). This position is in a bargaining unit represented by Local 947. On May 20, 2005, Brown became an Apprentice I at the Brewery. (V. II, Jt. Ex. 14 at ¶ 12). Brown's new position was also in the bargaining unit. (V. II, Jt. Ex. 14 at ¶ 12; Union Appx. V. I, 6 at 8-9).[10]

On September 23, 2009, ABBP suspended Brown for four weeks without pay. (V. II, Jt. Ex. 6 at 1). Local 947 filed a grievance under the CBA challenging Brown's suspension. (V. II, Jt. Ex. 7). While his first grievance was pending,[11] on December 7, 2009, Brown filed a charge with the Florida Commission of Human Relations, claiming he had been suspended because of his race and for retaliatory reasons related to his race claim. (V. II, Jt. Ex. 9).

On March 11, 2010, ABBP terminated Brown's employment. (V. II, Jt. Ex. 14 at ¶ 11). Brown grieved his termination through the CBA's grievance and arbitration procedure. (V. II, Jt. Ex. 8). While his termination grievance was

---

[10] "Union Appx. V. I, 6" refers to the ALJ's Decision at Tab 6 in V. I of Local 947's Appendix.

[11] On December 9, 2009, the Multi-Plant Grievance Committee denied Brown's suspension grievance. (V. II, Jt. Ex. 14 at ¶ 16).

pending, Brown filed a second charge with the Florida Commission of Human Relations alleging retaliation.  (V. II, Jt. Ex. 10).

In a decision issued May 3, 2010, the Multi-Plant Grievance Committee grievance arbitration panel convened pursuant to the CBA and upheld Brown's termination in a final and binding arbitration.  (V. II, Jt. Ex. 8).  Brown subsequently became employed by a different employer.  (Union Appx. V. II, Tr. at 48:16-19, 50:19-25, 51:1-10).[12]

## C. Standard of Review

"This Court reviews de novo the NLRB panel's legal conclusions." Franks v. NLRB, 742 Fed. Appx. 463, 468 (11th Cir. 2018) citing Mercedes-Benz U.S. Int'l Inc. v. Int'l Union, UAW, 838 F.3d 1128, 1134 (11th Cir. 2016).  "When reviewing an order of the Board, [the Court is] 'bound by the Board's factual findings if they are supported by substantial evidence on the record as a whole.'" Lakeland Health Care Assocs., LLC v. NLRB, 696 F.3d 1332, 1335 (11th Cir. 2012) (internal citations omitted).

The Court is "not obliged to stand aside and rubber-stamp [its] affirmance of administrative decisions that [it] deem[s] inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Id. (Internal citations omitted).  However, this Court will not "displace [the NLRB panel's] choice

---

[12] Transcript of Hearing at Tab 24 in V. II of the Local 947's Appendix.

6

between two fairly conflicting views, even though the court [may] justifiably have a difference choice had the matter been before it de novo." Franks, 742 Fed. Appx. at 463 quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951).

## IX.    SUMMARY OF THE ARGUMENT

The United States Supreme Court has long held that the First Amendment to the United States Constitution guarantees the right to petition the government, including the federal judiciary.  In the workplace context, the High Court has recognized that this right may be limited to prevent a party from advancing litigation which has an illegal objective or is both retaliatory and baseless.  In the present case, the NLRB's majority panel properly held that ABBP lawfully exercised its right to petition the government by filing a defensive Motion to Compel a pre-employment arbitration agreement in response to Brown's Lawsuit.  There is nothing in the NLRA which vests the NLRB with the authority to interfere with a District Court's consideration of the enforceability of a facially lawful arbitration agreement such as the one at issue in the present case.

Further, ABBP does not have the power to compel arbitration without the intervention of a court of competent jurisdiction.  Thus, ABBP has taken no "action" which can be found unlawful; rather, it has requested the District Court to rule on the enforceability of the DRP as to Brown.  The legality of this request (which may

or may not result in "action" as directed by the District Court) is governed by <u>Bill Johnson's</u> under which, the Board properly found, ABBP did not violate the Act.

Moreover, even if the NLRB did not dispose this matter based upon a First Amendment rationale, at the time ABBP filed its Motion to Compel in response to Brown's Lawsuit, he was no longer an employee, as that term is defined under the Act, or a bargaining unit member. As a result, ABBP had no bargaining obligation with Local 947 when it filed the Motion to Compel. Further, it cannot be overlooked that Brown's claim at issue is <u>not</u> a claim rooted in the CBA or the Act. Rather, it is a statutory right held by Brown both before and after his employment with ABBP, wholly distinct from the Union's purview as collective bargaining representative. Accordingly, ABBP did not violate Section 8(a)(5) and (1) of the Act when it filed its Motion to Compel based on this additional ground.

As discussed below, this Court should deny Local 947's Petition for Review in its entirety.

## X.    ARGUMENT AND CITATIONS OF AUTHORITY

### 1.    THE NLRB PROPERLY HELD ABBP'S MOTION TO ENFORCE THE DRP IN THE DISTRICT COURT DID NOT HAVE AN ILLEGAL OBJECTIVE AND WAS NEITHER BASELESS NOR RETALIATORY

The NLRB correctly held ABBP's Motion to Compel submitted in response to Brown's Lawsuit reflected a lawful exercise of its First Amendment right to petition the government. Both Local 947 and Brown ignore that ABBP has taken no

action against Brown.  Rather, it is up to the District Court to determine whether the DRP should be enforced against Brown.  Thus, the sole issue properly considered by the NLRB was whether ABBP's Motion to Compel (ABBP's only "action") violated the tenets of <u>Bill Johnson's</u>.  The NLRB correctly found no violation because ABBP's Motion did not have an illegal objective and was neither baseless nor retaliatory.

### a.    <u>The NLRB Properly Considered ABBP's First Amendment Right To Petition The Government Because ABBP Raised the Objection In Its Exceptions To The ALJ's Decision</u>

As a threshold matter, Brown argues the NLRB improperly considered ABBP's Petition Clause defense because ABBP did not raise it directly until its exceptions to the ALJ's Recommended Order.  Brown thus contends ABBP somehow waived its Petition Clause defense.   (Brown's Br. at 25-27).

Brown is wrong. Section 10(e) of the NLRA states "[n]o objection that has not been urged by before the Board, its member, agent, or agency, shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." <u>NLRB v. Contemporary Cars, Inc.,</u> 667 F.3d 1364 (11th Cir. 2012).  However, ABBP's Exceptions 10 and 13 expressly challenged the ALJ's recommended order directing it to withdraw its Motion to Compel on the ground it restricted its right to petition the government. (V. I, 8 at ¶ 10, 13).  Further, ABBP's Brief in Support of its Exceptions made this

9

point abundantly clear. (V. I, 9 at 27). Thus, ABBP fully presented this argument before the NLRB, which properly adjudicated the issue.[13]

Brown also suggests ABBP's failure to raise its Petition Clause defense in response to Brown's Lawsuit somehow impacted the NLRB's consideration of the matter. (Brown's Br. at 26). This argument is baseless. There would be no reason for ABBP to reflexively assert the Petition Clause defense in conjunction with its Motion to Compel because the Motion to Compel is, in of itself, the exercise of the First Amendment right. Moreover, Brown's Lawsuit and the Motion to Compel predate the unfair labor practice proceeding. As a result, and as discussed infra, the NLRB properly determined ABBP's Motion to Compel constituted a lawful exercise of its First Amendment rights and that such a defense has been properly preserved for this Court's review.[14]

---

[13] To the extent Brown intimates that the NLRB improperly considered the Petition Clause defense, it should have first filed a motion for reconsideration with the NLRB before seeking this Court's intervention. It is noteworthy that Local 947 does not make such a similar baseless argument. See e.g. Contemporary Cars, Inc., 667 F.3d at 1368-1369.

[14] Brown also claims ABBP somehow waived its right to invoke the DRP in response to his federal lawsuit because ABBP did not exercise its rights under the DRP in response to Brown's administrative charges. (Brown Brief, at 25). This point ignores that the DRP expressly states that it does not interfere with an employee's right to seek relief from an administrative agency and, at best, the DRP provides that ABBP could request that the EEOC defer processing of its investigation until the conclusion of the DRP process. (V. II, Jt. Ex. 1 at 3, 5). Brown cites no persuasive or binding authority to support this point.

**b.** **The Board Correctly Ruled ABBP's Motion to Compel Lacked An Illegal Objective**

The First Amendment's Petition Clause protects an employer's right to petition a federal court for relief.  See BE&K Constr. Co. v. NLRB, 536 U.S. 516, 524-25 (2002).  Specifically, "[t]he First Amendment provides, in relevant part, that 'Congress shall make no law … abridging … the right of the people … to petition the Government for a redress of grievances.'"  Id.  (Internal citations omitted).  The Supreme Court has "recognized this right to petition as one of 'the most precious of the liberties safeguarded by the Bill of Rights,' United Mine Workers v. Illinois Bar Ass'n, 389 U.S. 217, 222 (1967) and [has] explained that the right is implied by 'the very idea of a government, republican in form[.]'"  B&EK Constr., 536 U.S. at 524-525, quoting United States v. Cruikshank, 92 U.S. 542, 552 (1876).  The High Court has also explicitly found that "'the right to petition extends to all departments of the Government,' and that 'the right of access to the courts is … but one aspect of the right to petition.'"  BE&K Constr., 536 U.S. at 525, quoting California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510-511 (1972).

An employer's reliance on the First Amendment's Petition Clause is not without limit.  In the labor relations context, in Bill Johnson's and BE&K Constr. Co., the Supreme Court held the NLRB could find unlawful non-NLRB litigation which interferes with employee rights under the Act only if such litigation is both (1) meritless and (2) retaliatory.  Bill Johnson's, 461 U.S. at 748 ("[R]etaliatory

11

motive and lack of reasonable basis are both essential prerequisites" to issuing a remedy regarding litigation).[15]  There is, however, an exception to this rule set forth in footnote 5 of the <u>Bill Johnson's</u> opinion: the NLRB may also issue remedies for litigation that is either preempted by the NLRA or "has an objective that is illegal under federal law." <u>Id.</u> at 737 n.5.

> **i.    <u>ABBP's Motion to Compel Lacks An Illegal Objective Because The NLRA Does Not Prevail Over The Federal Policy Favoring Arbitration Agreements Such as The DRP</u>**

In analyzing these questions, this Court must remain cognizant of something lost on Brown and Local 947: that the Federal Arbitration Act ("FAA") embodies "a liberal federal policy favoring arbitration agreements," <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 25 (1991), and resolves any doubts concerning the scope of arbitrable issues in favor of arbitration.  <u>Moses H. Cone Memorial Hospital v. Mercury Construction Corp.</u>, 460 U.S. 1, 24-25 (1983); <u>American Express Co. v. Italian Colors Restaurant</u>, 570 U.S. 228, 232-33 (2013); <u>AT&T Mobility LLC v. Concepcion</u>, 563 U.S. 333 (2011). This strong federal policy in favor of arbitration applies equally in the employment context.  <u>See</u>, <u>e.g.</u>, <u>Circuit City Stores, Inc. v. Adams</u>, 532 U.S. 105, 122 (2001); and <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. at 25.

---

[15] It is unclear how Brown reaches a contrary conclusion in light of the Supreme Court's clear mandate in <u>Bill Johnson's</u>.

Critically, in the interim period between when the ALJ and the NLRB issued their decisions in the present case, the United States Supreme Court issued its decision in <u>Epic Systems Corp. v. Lewis</u>, 138 S.Ct. 1612 (2018). In that case, the Court ruled that class/collective action waivers contained within arbitration agreements do not run afoul of the NLRA. Notably, the Supreme Court found that the purported NLRA defense advanced by the employees and the NLRB in that case – that such waivers restricted employees' Section 7 rights to engage in protected concerted activity – "impermissibly disfavor[ed] arbitration" in contravention of the FAA. <u>Id.</u> at 1623.

The Supreme Court in <u>Epic Systems</u> also recognized that the NLRA "does not express approval or disapproval of arbitration…," and "does not even hint at a wish to displace the [FAA]." <u>Id.</u> at 1624. That is not surprising because, as here, in <u>Epic Systems</u>, the employees' underlying causes of action did not arise under the NLRA, but rather under a different statute (the Fair Labor Standards Act). <u>Id.</u> at 1626. The High Court recognized that statutes affording employees' statutory rights do not impede individualized arbitration agreements. <u>Id.</u>, <u>citing</u> <u>Gilmer</u>, 500 U.S. at 32. The Court then forcefully delivered the following point:

> Faced with that obstacle, the employees are left to cast about elsewhere for help. And so they have cast in this direction, suggesting that one statute (the NLRA) steps in to dictate the procedures for claims under a different statute (the FLSA), and thereby overrides the commands of a yet a third statute ([the FAA]). **It's a sort of**

> **interpretive triple bank shot, and just stating that**
> **theory is enough to raise a judicial eyebrow.**

Id. at 1626.  (Emphasis added).

Finally, in illustrating that the NLRA's application is limited when put into context with statutes affording individuals with substantive rights, the High Court explained:

> Union organization and collective bargaining in the workplace are the bread and butter of the NLRA, while the particulars of dispute resolution procedures in Article III courts or arbitration proceedings are usually left to other statutes and rules – not least the Federal Rules of Civil Procedure, [the FAA], and [other statutes affording substantive rights]. **It's more than a little doubtful that Congress would have tucked into the mousehole of Section 7's catchall term an elephant that tramples the work done by these other laws; flattens the parties' contracted-for dispute resolution procedures; and seats the Board as supreme superintended of claims arising under a statute it doesn't even administer.**

Id. at 1627.  (Emphasis added).

Against this backdrop, it should be noted that under virtually identical circumstances as in this case, the United States District Court for the Southern District of Texas, Houston Division, granted AB's motion to compel arbitration of the plaintiff's race discrimination claim.  Scott v. Anheuser-Busch, Inc. Case 4:11-cv-00477).  (V. II, Jt. Ex. 12 at 4).  Significantly, on November 17, 2011, the Scott Order was affirmed on appeal by the United States Court of Appeals for the Fifth Circuit.  Id.  Further, to the extent there is any interference with rights under the Act,

14

the intersect is tangential and subject to a balancing exercise. ABBP does not seek to compel arbitration of collectively bargained rights or matters rooted in the Act. Rather, Brown's claims are rooted in Title VII, a statute that applies to him irrespective of the Act and the CBA. Brown agreed to submit such claims to the DRP before he was an employee, and he brought such claims after he was no longer an employee.

It is hard to fathom that ABBP's Motion to Compel had an illegal objective when one of this Court's sister circuits has expressly approved the DRP's application to a federal lawsuit asserting employment discrimination claims. See Murphy Oil USA, Inc. v. NLRB, 808 F.3d 1013 (5th Cir. 2015), aff'd. sub. nom, Epic Systems Corp. v. Lewis, 138 S. Ct. 1612 (2018) (finding the NLRB was "a bit bold" in holding that an employer, following Fifth Circuit precedent, which filed a defensive motion to compel individual arbitration, had an "illegal objective" in doing so and noting the NLRB "might want to strike a more respectful balance between its views and those of circuit courts reviewing its orders."). In the present case, the NLRB properly heeded this advice in concluding that ABBP's defensive Motion to Compel lacked any "illegal objective."

### ii. ABBP's Motion to Compel Is Not Unlawful Pursuant to The Supreme Court's Decision In Bill Johnson's

Local 947 and Brown erroneously attempt to adopt a broader reading of the Bill Johnson's exception for litigation with an illegal objective than it can possibly

15

bear.  In <u>Bill Johnson's</u>, the Supreme Court decided whether the Board could remedy litigation "brought by an employer to retaliate against employees for exercising federally protected labor rights, without also finding that the suit lacks a reasonable basis in fact or law."  461 U.S. at 733.[16]  The General Counsel issued a complaint alleging that an employer's lawsuit against an employee violated 8(a)(1) and 8(a)(4).  <u>Id.</u> at 735.  The ALJ and the Board agreed that the employer had violated 8(a)(1) and 8(a)(4). <u>Id.</u> at 735-37.

The Supreme Court held that, although 8(a)(1) and 8(a)(4) are broad and are intended to protect Section 7 rights, and even though there was no doubt that a lawsuit could be used by an employer as a powerful instrument of coercion or retaliation, coercion and retaliation alone were insufficient to permit a remedy.  <u>Id.</u> at 740-41.  "The filing and prosecution of a well-founded lawsuit may not be enjoined as an unfair labor practice, even if it would not have been commenced but for the plaintiff's desire to retaliate against the defendant for exercising rights protected by the Act."  <u>Id.</u> at 743.  In other words, even though litigation activities can be undertaken with the express purpose of interfering with Section 7 rights and violating Section 8(a) of the Act, the Board is powerless to prohibit or sanction

---

[16] In <u>Bill Johnson's</u>, the employer brought a libel suit against picketers. 461 U.S. at 734.

employers for engaging in such litigation activities except as allowed by <u>Bill Johnson's</u>, exceptions.

<u>Bill Johnson's</u> prohibits the Board from finding a violation of the Act even if an employer intended to infringe on Section 7 rights and violate 8(a). <u>Id.</u> at 743. Thus, <u>Bill Johnson's</u> exception for litigation with an "objective that is illegal under federal law" cannot be interpreted to allow the NLRB to prevent an employer from pursuing a motion to compel arbitration before a separate judicial body. Here, the phrase "objective that is illegal under federal law" must be narrowly interpreted to only include litigation intended to circumvent Board orders. In filing the Motion to Compel, there is no evidence ABBP tried to interfere with Brown's Section 7 rights or has tried to circumvent any NLRB order. Therefore, the Motion to Compel therefore does not have an unlawful objective.

Additionally, as the NLRB majority correctly found, if the phrase "objective that is illegal under federal law" is interpreted broadly to include any action that impairs rights under the NLRA, then the <u>Bill Johnson's</u> exception would swallow the <u>Bill Johnson's</u> rule. No party has asserted the DRP is facially unlawful. In fact, that is exactly what distinguishes <u>Elevator Constructors (Long Elevator)</u>, 289 NLRB 1095, 1095 (1988), <u>enf'd.</u> 902 F.2d 1297 (8th Cir. 1990), relied on by the NLRB's

dissenting member and Local 947.[17]  In that case, unlike here, the NLRB was the sole body determining whether a particular collective bargaining agreement clause, and the attempt to enforce it, was unlawful.  That is not evident here, where Brown filed a lawsuit in the United States District Court for the Middle District of Florida and ABBP filed a defensive Motion to Compel which has not yet been decided.[18]

That is precisely why the NLRB majority properly relied upon <u>Regional Construction Corp.</u>, 333 NLRB 313, 320 (2001) where the Board found that for the illegal objective criterium to be satisfied, an employer's motion "has to have involved a matter ... which if granted would commit the court to countenance an[] underlying act by the [employer] which would be a violation of some federal law."  Far from violating federal law, granting ABBP's motion would honor the FAA. <u>See Epic Systems</u>, 138 S.Ct. at 1612, discussed <u>supra</u>.

Moreover, Brown and Local 947 ignore that the threshold question of whether the DRP is lawful has not yet been fully adjudicated by the District Court (but, for the reasons stated in <u>Scott</u> and the other authority addressed above, it should be

---

[17] The dissenting NLRB member also incorrectly relied upon <u>J.I. Case Co. v. NLRB</u>, 321 U.S. 332, 338 (1944).  (Union Appx. V. II 22 at 7).  That case involved the enforceability of an individual contract intended to "impede employees" from organizing. The DRP does no such thing and, in fact, preserves Brown's substantive rights to assert his discrimination and retaliation claims, albeit in an arbitral forum.

[18] In fact, one could argue that Brown's Lawsuit had an illegal objective because it contravened the DRP. It is also noteworthy that Local 947 never sought to intervene in the proceedings before the District Court.

deemed enforceable). Thus, Brown and Local 947 fail to recognize that it is the District Court which will ultimately make that determination. The NLRB, whose orders are not self-enforcing, has no right to dictate how an Article III Court should rule on this issue. Thus, contrary to what Brown and Local 947 assert, it simply cannot be that ABBP's Motion to Compel served as an "underlying act" to serve an "illegal objective." This puts the proverbial cart before the horse.[19]

As a result, even assuming arguendo that ABBP's filing of the Motion to Compel violated Section 8(a)(5), a violation of Section 8(a)(5) alone cannot be construed as an "objective that is illegal under federal law." And, Section 8(a)(5) must yield to the First Amendment of the Constitution. Accordingly, it would be improper for the Board to interfere with ABBP's Motion in any way. Thus, the Petition for Review should be denied.[20]

---

[19] Contrary to Brown's assertion, the DRP does not "deprive employees of the right to file and the Board to pursue ULP charges." (Brown Brief, at 17). In fact, such a claim is baseless in light of the fact that Brown filed a charge with the NLRB.

[20] Local 947 and the dissenting NLRB member intimate that the Petition Clause defense creates a "giant loophole in the unilateral change doctrine itself." (Union Brief, at 17). Local 947 cites the dissenting opinion's conclusion that, based on the Petition Clause, an employer could impose an arbitration policy on union-represented employees without providing their bargaining representative with notice and an opportunity to bargain, all under the guise of a court filing. (Union Appx. V. II, 22 at 8-9). What Local 947 and the dissent ignore is that the employer in that scenario would only be seeking enforcement. There is no guarantee that such relief would automatically be granted. To this end, Local 947 predicts a doomsday scenario that has not evinced itself.

19

### iii.  Brown and Local 947's Proposed Framework Is Entirely Unworkable

Finally, Brown and Local 947 seek to create an unworkable framework which would inevitably cause conflict between the NLRB, an executive branch agency, and the federal judiciary.  In the present case, the District Court has deferred ruling on the Motion to Compel pending the outcome of the NLRB proceeding.  (Union Appx. V. I, 19).  By happenstance, this Court has appellate jurisdiction over both the instant case as well as Brown's Lawsuit which was filed in a District Court within its geographic confines.  However, the NLRA contains a broad venue provision allowing an aggrieved party to file a petition for review in any jurisdiction in which it transacts business.  See 29 U.S.C. § 160(f).  As a result, because NLRB orders are not self-enforcing, it is entirely plausible for a circuit court to be called upon to enforce an NLRB order which would not have to be followed by a district court (or even a state court) outside of the circuit court's boundaries.[21]  Such an unworkable framework demonstrates why the NLRB has no authority to interfere with the judiciary.

---

[21] For example, if ABBP was not the prevailing party in the proceedings below, it could have filed a petition for review in the United States Court of Appeals for the Eighth Circuit, where it is headquartered.  The Eighth Circuit would not have appellate jurisdiction over a District Court within this Circuit's confines, setting up a potential conflict between the two judicial bodies.

In the present case, the ALJ's remedial order, which Brown and Local 947 urge this Court to endorse, includes the following affirmative directive that ABBP must take: "[f]orthwith withdraw that portion of its defense in Brown's District Court lawsuit that requests the District Court have the matter before it decided pursuant to the Company's DRP policy." (Union Appx. V. I, 6 at 11). Lost, however, in this mandate is the possibility that the District Court might ultimately deny such a request on separation of powers grounds (or that it does not believe any NLRA defense is meritorious). That is precisely why the NLRB correctly decided it had no authority to interfere with ABBP's First Amendment right to petition the government by filing its defensive Motion to Compel.[22] Accordingly, this clearly unworkable framework highlights the flaws in Brown and Local 947's arguments and, instead, establishes why the NLRB properly opted not to infringe upon ABBP's First Amendment right to petition the government in response to Brown's Lawsuit.[23]

---

[22] This flaw further illustrates why Brown's argument that the Petition Clause does not apply is misplaced. Without relying upon any authority, Brown contends that the NLRB's purported finding of an unfair labor practice "must restrain or interfere with protected litigation activity before the Clause applies." (Brown Brief, at 16). That is backwards. ABBP has the right to file its Motion to Compel irrespective of whether it is considered an unfair labor practice to do so.

[23] The dissenting NLRB member asserts the District Court adjudicating Brown's Lawsuit "owes no deference to the Board's misinterpretation of *Bill Johnson's* or its misunderstanding of the Petition Clause." (Union Appx. V. II, 22 at 10). However, that point of view further demonstrates a lack of awareness of an Article III Court's ability to decide its own issues without interference from an administrative agency. Therefore, the majority reached the correct decision.

### c.    AB's Motion to Enforce the DRP Was Neither Baseless Nor Retaliatory

As the Board correctly noted, no party argued in the proceedings below that ABBP's Motion to Compel was either baseless or retaliatory.  Even if Local 947 or Brown had done so, any such claim would have been completely unmeritorious.  The general rule in Bill Johnson's allowing sanctions for meritless, retaliatory litigation does not apply to the instant case.

As noted supra, the FAA applies to contracts affecting interstate commerce and requires courts to enforce a written agreement to arbitrate contained in any such contract.  9 U.S.C. § 2.  Under the FAA, a court must grant a motion to compel arbitration and stay the lawsuit pending arbitration if:  (1) "the plaintiff entered into a written arbitration agreement that is enforceable 'under ordinary state-law' contract principles"; and (2) "the claims before the court fall within the scope of that agreement."  See, e.g., Lambert v. Austin Ind., 544 F.3d 1192, 1195 (11th Cir. 2008).

Critically, ABBP's Motion to Compel remains pending before the District Court.  It is fair to presume that, given the age of the Motion to Compel (i.e., it was filed seven years ago), the District Court would have denied it if it were truly baseless.  Additionally, there is no evidence Brown has resorted to filing a motion under Rule 11 of the Federal Rules of Civil Procedure against ABBP on the grounds that the Motion to Compel was somehow frivolous or made in bad faith.  In fact, Rule 11 could hardly be deemed appropriate in the present case because, as noted

22

above, the district and appellate courts in the <u>Scott</u> matter deemed a nearly identical motion to compel arbitration to be *meritorious*, thereby undercutting any claim that the Motion to Compel in this case was improperly filed.  As a result, the Board correctly held that ABBP's Motion to Compel was not baseless.

Finally, Local 947 and Brown fail to point to any evidence suggesting that ABBP's Motion to Compel evinced any retaliatory animus within the meaning of <u>Bill Johnson's</u>.  As a result, the Board properly deemed the Motion to Compel to constitute a lawful exercise of ABBP's First Amendment rights.  As a result, the Petition for Review should be denied.

## 2.    <u>EVEN IF THE NLRB DID NOT DISMISS THE COMPLAINT ON CONSTITUTIONAL GROUNDS, THE MOTION TO COMPEL DID NOT OTHERWISE VIOLATE THE ACT</u>

The Act's requirement to bargain with a union is not unlimited.  Reading Sections 8(a)(5), 8(d), and 9(a) of the Act together, an employer is only required to bargain with a union over "terms and conditions of employment" for "employees" in a "unit appropriate for such purposes."  In other words, there is no obligation to bargain with a union over issues that apply to nonemployees or individuals outside of the bargaining unit, unless that issue vitally affects current bargaining unit employees.  <u>Star Tribune</u>, 295 NLRB 543, 547 (1989) (citing <u>Allied Chemical & Alkali Workers of Am. v. Pittsburgh Plate Glass Co.</u>, 404 U.S. 157 (1971)).

As noted above, at the time ABBP filed the Motion to Compel, Brown was no longer an "employee" as defined by Section 2(3) of the Act, nor was he a member of the Local 947 bargaining unit. Indeed, when Brown entered into an agreement to be covered by the DRP at the time he applied for work, he was also not a member of the Local 947 bargaining unit. The Act does not obligate ABBP to bargain with Local 947 over the DRP's application to individuals outside of the bargaining unit because the DRP does not vitally affect current bargaining unit members.

### a.   ABBP's Dispute Resolution Program Policy Was Not Applied to Charging Party While He Was Employed

ABBP never applied or attempted to apply the DRP to Brown while he was a member of the bargaining unit at the Jacksonville Brewery. (Union Appx. V. II, Tr. at 45:13-23; 93:3-25). Because the CBA had an arbitration procedure contrary to the DRP (V. II, Jt. Ex. 5 at 18), ABBP did not attempt to apply the DRP to Brown's suspension. (Union Appx. V. II, Tr.at 45:13-23, 93:19-25). ABBP also did not attempt to apply the DRP to Brown's charges at the Florida Commission of Human Relations. (Union Appx. V. II, Tr.at 45:13-23, 93:13-18). Finally, ABBP did not attempt to apply the DRP to Brown's termination. (Union Appx. V. II, Tr.at 45:13-23).

ABBP's restraint was intentional. The DRP is only triggered if there is no contract to the contrary. (Union Appx. V. II, Tr.at 93:19-25). As a bargaining unit member, the CBA's grievance and arbitration procedure provided a contract to the

24

contrary. (V. II, Jt. Ex. 5 at 18; Union Appx. V. II, Tr.at 94:15-19). Contrary to what the dissenting NLRB member found, the DRP, thus, was never applied to Brown when he was a bargaining unit member (nor to any other bargaining unit member in Jacksonville). (Union Appx. V. II, Tr.at 94:1-19). In contrast, there is no basis for concluding that a Section 8(a)(5) violation of the Act occurred when the ABBP's DRP was applied to a non-bargaining unit member.

### b.  Once Brown's Termination Was Upheld, He Was No Longer Member of the Bargaining Unit

The United States Supreme Court has confirmed that individuals who have been completely and finally separated from employment are not a part of bargaining unit. Pittsburgh Plate Glass Co., 404 U.S. at 165. First, the former worker does not meet the definition of "employee" under the Act. Id. at 165-71. Second, by the terms that define a particular bargaining unit, former workers may be excluded by definition. Id. at 172. Third, former workers lose their community of interest with the bargaining unit. Id. Following the Supreme Court's analysis, when ABBP filed the Motion to Compel, Brown: (1) was not a part of the bargaining unit; (2) not a Section 2(3) employee; (3) no longer fell within the contractually defined bargaining unit; and (4) no longer shared a community of interest with the rest of the bargaining unit. As a result, there was no bargaining obligation in connection with the policies applied to that individual.

### i.  Brown Was Not an Employee Under Section 2(3) of the Act.

Section 2(3) of the Act defines an "employee" as "any employee, and shall not be limited to the employees of a particular employer, unless the Act explicitly states otherwise, and shall include any individual whose work has ceased **as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice**, and who has not obtained any other regular and substantially equivalent employment …." (emphasis added).  Brown was not a Section 2(3) employee for at least three reasons.

First, on March 11, 2010, ABBP terminated Brown, and that decision was upheld by the Multi-Plant Grievance Committee, a committee created by the CBA for resolving grievances, with a balanced membership of two union representatives, two representatives for ABBP, and a neutral party.  (Union Appx. V. II, Tr. at 89:11-24, 91:7-12).  At the time of the Motion to Compel, Brown no longer worked for ABBP and, thus, he was no longer an "employee" under the ordinary meaning of the word.  Further, by fully arbitrating his claims before the Multi-Plant Grievance Committee, Brown fully pursued all collectively bargaining recourse with full participation and no interference by ABBP.

Contrary to the suggestion of the dissenting NLRB member, there is no evidence Brown's termination had a causal nexus with any current labor dispute or any unfair labor practice.  (Union Appx. V. II, 22 at 7-10).  Though Section 2(3)

includes individuals who are terminated as a result of a labor dispute, Brown admitted that he was unaware of any unfair labor practice or labor dispute that lead to his termination and no evidence was presented to the contrary. (Union Appx. V. II, Tr. at 60:6-14). Because he was not discharged as part of a labor dispute or unfair labor practice, Brown also is not a Section 2(3) employee under the Act for this reason.

Second, former employees, like Brown, who file personal lawsuits are not engaged in activities for mutual aid and protection and the filing of the lawsuit does not make them "employees." In <u>Stationary Engineers, Local 39</u>, 346 NLRB 336, 347, n. 13 (2006), for example, an Administrative Law Judge whose decision was affirmed by the Board noted,

> Sec. 2(3) of the Act defines who are employees. It includes individuals who have lost their jobs due to a labor dispute or because of an unfair labor practice. <u>It does not include former employees who are filing personal lawsuits against their former employer and who have lost their jobs for other reasons</u>. (emphasis added)

<u>See</u> <u>also</u>, <u>Briley Marine</u>, 269 NLRB 697, 697 (1984) (holding that filing a private lawsuit, even if it had some benefit or interest to bargaining unit employees, is not protected activity under Section 7). Here, Brown was a former employee who brought a personal lawsuit. Local 947 is not a party in the lawsuit. (Union Appx. V. II, Tr. at 54:12-21). Because Brown lost his job for reasons other than a labor

dispute and, therefore, he is not a Section 2(3) employee, ABBP had no bargaining obligation with Local 947 as to the application of its policies to him.

Third, other than boilerplate law about unilateral implementation of mandatory subjects of bargaining and a brief reference to a footnote in Utility Vault Co., 345 NLRB 79 (2005), the only law cited by the ALJ with respect to all of his findings and conclusions are the four cases he cites on Page 8 of his Decision during his discussion of the definition of an employee in Section 2(3) of the Act. (Union Appx. V. I, 6 at 8).

Utility Vault Co. is distinguishable. In that case, a complaint was issued against an employer for alleged violations of Sections 8(a)(1) and 8(a)(5) arising from the implementation of a dispute resolution program without bargaining. Id. at 80. Under Utility Vault's policy, employees could be discharged if they did not sign the dispute resolution policy agreement within three days after they started. Id. at 82. The policy, by its terms, applied to newly hired employees already on the payroll, unlike the case here. Id. The ALJ mentioned twice that the dispute resolution program could be applied to current employees as justification for his ruling. See, id. at 83, 84. The policy in Utility Vault also included a waiver of rights to file charges at the Labor Board and superimposed a broader arbitration procedure that applied to current employees over and above the collective bargaining

28

agreement's grievance and arbitration procedure.  Id. at 83.  Neither of these factors is present in this case.

Unlike the employer in Utility Vault Co., ABBP never has applied its DRP to current bargaining unit employees in Jacksonville.  (Union Appx. V. II, Tr. at 45:13-23, 93:19-25).  This distinction between applying the policy to current bargaining unit employees and applying the policy to former employees, who are no longer members of the bargaining unit, is crucial.

At most, ABBP's DRP is a permissive subject of bargaining because the evidence showed it was not applied to current Jacksonville Brewery bargaining unit members.  Under these circumstances, Local 947's interest in the policy can only be deemed insubstantial.  In fact, two Union officials testified that they were never aware of the policy even though it had been in effect for years and virtually every potential bargaining unit employee agreed to the policy prior to being hired.  (Union Appx. V. II, Tr. at 92:22-25; 93:1-2; 64:4-12 and 69:9-12).

The ALJ's reliance on the other cases to establish that Brown was an employee under the Act for purposes of this case is erroneous.  Briggs Mfg. Co., 75 NLRB 569 (1947); NLRB v. Town & Country Electric, Inc., 516 U.S. 85 (1995); Phelps Dodge Corp. v. NLRB, 313 U.S. 177 (1941); Little Rock Crate and Basket Co., 227 NLRB 1406 (1977). These cases involve Section 8(a)(3) and Section 8(a)(4) violations of the Act.  These Sections protect employees from discrimination

29

because of their union activities. The Board and the Supreme Court use the broad definition of employee in the first part of Section 2(3) of the Act – what sometimes is referred to as the "member of the working class" definition. This is designed to protect workers from discrimination because of their union affiliations or proclivities. Section 8(a)(5) cases, such as the one currently before the Board, are far different and involve the application of the narrower definition of Section 2(3) of the Act, focusing on an employee's bargaining unit status. In fact, one of the cases on which the ALJ relies, Briggs Mfg. Co., 75 NLRB at 569, makes this distinction.

Briggs was the first case on which the ALJ relied. In Briggs, the Board found an 8(a)(4) violation when the employer refused to rehire an individual because he had filed an unfair labor practice charge with the Board regarding his termination. Id. at 570. The Board applied the broad "member of the working class" definition because the individual had no employer-employee relationship when he reapplied for employment and the employer discriminated against his reapplication. Id. Significantly, however, the Board distinguished this type of case from 8(a)(5) cases, such as the one currently before this Court. The Board stated, "In its [Section 2(3)'s] limited sense, the term [employee] may include only the employees of a particular employer, as for example, in Section 8(a)(5), which requires the employer 'to bargain collectively' with the representatives of his employees, subject to the

provisions of Section 9(a)."[24]  Id. at 570-71 (emphasis added).  The Board further states that because an 8(a)(4) charge was involved, the broad definition of employee (as opposed to the narrow definition above) had to be utilized in Briggs.

The ALJ next relied on Town & Country Electric, Inc., 516 U.S. at 85 and Phelps Dodge Corp, 313 U.S. at 177.  Both of these cases, however, involved 8(a)(3) charges filed by applicants for employment.  The ALJ correctly concluded that applicants for employment are treated as employees under Section 2(3) of the Act because they allege discrimination in hiring under Section 8(a)(3).  The ALJ failed to distinguish between Section 2(3)'s broad definition applicable in such cases and Section 2(3)'s narrower definition applicable in an entirely different Section 8(a)(5) case such as this one.

In Phelps Dodge, the Supreme Court made the same distinction that the Board did in Briggs:

> The reference in §2(3) to workers who have 'obtained regular and substantially equivalent employment' has a role consonant with some purposes of the Act but not one destructive of the broad definition of 'employee' with which §2(3) begins.  In determining whether an employer has refused to bargain collectively with the representatives of 'his employees' in violation of §8(5) and §9(a) it is of course essential to determine who constitute 'his employees.'  One aspect of this is covered by §9(b) which provides for determination of the appropriate bargaining unit. And once the unit is selected, the reference in §2(3)

---

[24] The ALJ ignored Briggs and erroneously applied the broad definition to this 8(a)(5) case, when the more limited definition should have been used.

> to workers who have obtained equivalent employment
> comes into operation in determining who shall be treated
> as employees within the unit.

313 U.S. at 192. Once again, the ALJ's reliance on Section 8(a)(3) cases using the broad meaning of the term employee misconstrues Section 2(3)'s definition of employee and precludes him from correctly using the concluding part of Section 2(3), which determines who are the represented "employees" as to whom an employer must bargain collectively with their representative.

Perhaps the ALJ's most serious mistake (which Brown repeats) is the misapplication of Little Rock Crate & Basket Co., 227 NLRB at 1406, to this case. In Little Rock, like Town & Country and Phelps Dodge, an 8(a)(3) charge was involved. The Board applied the "member of the working class" definition. The Board treated a worker, terminated only hours earlier and still on the employer's premises, as an employee under the Act. Id. at 1407. The Little Rock Board relied on Briggs and a case called Oak Apparel, Inc., 218 NLRB 701 (1975) when it applied Section 2(3)'s broad definition. Again, no 8(a)(5) charge or unilateral implementation of a mandatory subject of bargaining was involved. Indeed, the Board in Oak Apparel states: "The distinction between an employee's status with respect to the appropriate bargaining unit and his or her status as an 'employee' within the meaning of **Section** 2(3) has been recognized since the infancy of the

administration of the Act." <u>Id.</u> at 701 (citing <u>Phelps Dodge</u>, 313 U.S at 192). Unfortunately, in this case, the ALJ erroneously failed to recognize this distinction.

While a worker terminated only hours earlier in violation of the National Labor Relations Act and still on the property may be an employee under the Act, a worker like Brown who had been terminated for nearly two years after final and binding arbitration, with no NLRA claim, is not.

### ii. <u>Brown Did Not Fall Within the Definition of the Bargaining Unit.</u>

By the CBA's own terms, Brown was not a member of the bargaining unit. The unit is defined to include "[a]ll maintenance and production and utilities **employees** of [ABBP], including hourly rated employees at its Jacksonville, Florida brewery, excluding clerical employees, professional employees, guards, watchmen and supervisors as defined in the National Labor Relations Act." (V. II, Jt. Ex. 14 at ¶ 2) (incorporating by reference paragraph 5(a) of the Complaint) (emphasis added). Once Brown's termination was upheld, he was no longer an "employee" and therefore fell outside of the contractually defined bargaining unit the union represents. Accordingly, there was nothing concerning him about which to bargain with the Union.

### iii. Brown Lost His Community of Interest with the Bargaining Unit.

Brown also lost his community of interest with bargaining unit members, putting him outside of the unit for another reason.  The Supreme Court explained that former employees no longer have a community of interest with current employees, so they cannot be a part of the pre-separation unit.  See Pittsburgh Plate Glass Co., 404 U.S. at 172 ("Pensioners' interests extend only to retirement benefits, to the exclusion of wage rates, hours, working conditions, and all other terms of active employment.").  Including such individuals in a bargaining unit violates the Act. Id. at 173.

Here, when ABBP filed its Motion to Compel, Brown lost his community of interest with the bargaining unit members at ABBP's Jacksonville Brewery because his sole interest now is his personal lawsuit.  The current employees are not interested in the DRP's application to a private lawsuit brought by a former employee because it does not apply to them and the outcome of his claim will have little, if any, effect on them.  Moreover, they have traditional concerns, such as wage rates, hours, working conditions and their own grievance and arbitration procedure. As an ex-employee, Brown shares none of those interests, so he cannot be a part of

the bargaining unit.  For this additional reason, ABBP did not have to bargain with Local 947 about whether it could apply the DRP to Brown after he was terminated.[25]

Additionally, Brown has no prospect of being returned to the bargaining unit. In Brown's Lawsuit, he is not seeking reinstatement.  (V. II, Jt. Ex. 11).  Moreover, ABBP has discretion to refuse to reinstate Brown, even if he is successful in the DRP proceedings.  (V. II, Jt. Ex. 1 at 16.1).  A reinstatement theory cannot make Brown a bargaining unit employee because he is not entitled to reinstatement.  As a result, his claim also has even less of an impact on current bargaining unit employees.

In addition to a record devoid of any evidence that Brown is still pursuing his employment status, there is another issue with the ALJ's conclusion that an employee who continues to pursue his/her employment status through some other

---

[25] The ALJ found, without citing any authority whatsoever, that "Brown was, and continues to be, an employee at all times applicable here, including when the Company filed its June 4, 2012 Motion [to Compel Arbitration under the DRP] with the District Court.  Brown is still, at present, challenging his employment status in District Court." (Union Appx. V. I, 6 at 10).

In addition to the lack of any articulated rationale for his conclusions and his failure to cite any authority for expanding the definition of employee in the Act, the ALJ erred in another way when he found that Brown's Lawsuit kept his employment status alive, long after his termination.

Under these circumstances, the ALJ's finding that Brown continued to remain an employee constitutes error and makes this case different from one where a terminated employee seeks reinstatement, for example, under Section 8(a)(3) of the Act.

statutory scheme continues to remain an employee under the Act.[26]  There is no

definitive time limit for the end of a terminated employee's employment status under

the ALJ's theory.  Is it four years, the deadline for filing a race claim under 42 U.S.C.

§ 1981?  Is it five years and 90 days if it takes the Equal Opportunity Employment

Commission that long to investigate and issue a Right to Sue Notice?  The ALJ's

theory that a former employee remains protected by the Act for an undefined period

of time is not only unsupported by NLRA case law or Section 2(3) of the Act itself,

it is also impractical since former employees and current bargaining unit employees

have little in common.[27]

---

[26] Nor can support for the ALJ's findings and conclusions be obtained from Board
election cases where individuals have challenged the lawfulness of their discharges
and are allowed to vote under challenge.  See, for example, Advance Industrial
Security, 217 NLRB 17, 17-18 (1975) (discharged employee awaiting disposition of
claim under the Age Discrimination in Employment Act of 1967 allowed to vote
under challenge in NLRB election).  In such election cases, no definitive conclusions
were reached as to the status of such employees' eligibility.  They were only allowed
to vote under challenge with any decision about their status deferred until the future.
A decision as to their eligibility to vote could turn on whether their ballots affected
the outcome, as well as perhaps the outcome of their ancillary proceedings.  "Under
standard Board practice, when a classification of employees votes under challenge
and their challenged ballots are not determinative of the election results, that
classification is neither included nor excluded from the unit."  New York Law
Publishing Company, 336 NLRB No. 93 (2001) at page 1.  The status of individuals
in these situations is too indefinite to rely on for these cases to support the ALJ's
decision here.

[27] The ALJ also ignored that Brown signed the DRP outside of the Section 10(b)
limitations period. Section 10(b) establishes a strict limitations period for filing a
complaint "based upon any unfair labor practice occurring more than six months
prior to the filing of the charge."  This limitation period applies to applicants for

     **c.**    **ABBP's Application of Its DRP to an Individual Outside the Bargaining Unit Is Not a Mandatory Subject of Bargaining Because It Does Not Vitally Affect Bargaining Unit Members**

As discussed above, in <u>Pittsburgh Plate Glass Co.</u>, 404 U.S. 157, the Supreme Court held, in part, that retired employees of Pittsburgh Plate Glass could not be considered "employees" in the context of a Section 8(a)(5) case involving an Employee's unilateral change to one of their benefits. The Supreme Court further held that unilateral changes to such employee's benefits would only violate Section 8(a)(5) if the change vitally affected the terms and conditions of employment of current bargaining unit members. The Court explained that although bargaining unit members cared about retiree medical insurance, that benefit only had a tangential effect on them and, therefore, did not constitute a mandatory subject of bargaining. Thus, the Court concluded that the employer's change to pension benefits affecting retirees did not violate Section 8(a)(5) because the retirees were not members of the bargaining unit and the change did not vitally affect the interests of current bargaining unit members.

---

employment. <u>S.E. Coal Co.</u>, 242 NLRB 547, 550 (1979) ("[T]o except applicants for employment from the time limitations proviso of Section 10(b) [is] a proposition for which there is no support in the legislative history of the Act or in Board or court precedents."). Brown signed the DRP Agreement in 2004 and did not file a charge with the NLRB until 2012. Because more than six months passed between Brown's signing the DRP and the time of his Charge, any claim that Brown was an employee when he was an applicant was time-barred.

The ALJ in this case "ducked" the issue of whether the DRP vitally affected current bargaining unit members by concluding that Brown was an employee and a member of the bargaining unit.  In addition, the ALJ's failure to consider whether the imposition of the DRP, post-termination, vitally affects current bargaining unit employees is another basis for not adopting his findings and conclusion.

A policy applicable to non-bargaining unit members is a mandatory subject of bargaining **only** if that policy vitally affects current bargaining unit members:

> [W]hen an employer makes decisions involving the interests of individuals outside the bargaining unit, the Board will not find an 8(a)(5) violation if the employer fails to notify the union in advance of implementation unless the "third-party concern . . . vitally affects the 'terms and conditions' of [bargaining unit employees'] employment."

See Utility Vault, 345 NLRB 79, 82 (2005) (quoting Star Tribune, 295 NLRB at 547).

However, the Board has defined the contours of what "vitally affects" bargaining unit employees:

> An indirect or incidental impact on unit employees is not sufficient to establish a matter as a mandatory subject. Rather, mandatory subjects include only those matters that materially or significantly affect unit employees' terms and conditions of employment. Similarly, the phrase "terms and conditions of employment" is to be construed in a limited sense and does not include all subjects that may merely be of interest or concern to the parties.

United Techs. Corp., 274 NLRB 1069, 1070 (1985), enf'd, 789 F.2d 121 (2d Cir. 1986). The Supreme Court has also said that a policy is not a mandatory subject of bargaining if the effect on current bargaining unit members is "speculative and insubstantial." Pittsburgh Plate Glass Co., 404 U.S. at 180.

As ABBP's employees carry out their work responsibilities on a daily basis, it is unlikely that they are concerned about whether a post-employment lawsuit they might bring against their employer will be processed in court or before a dispute resolution panel. They are concerned about pay, benefits, time off and discipline issues. They have a grievance and arbitration procedure and anti-discrimination language in their collective bargaining agreement that protects them. They have a union that assists them. These are what substantially interest them. Where a dispute can be tried, long after employment, does not.

### d.  Brown Did Not Become An Employee Within The Meaning Of The Act By Virtue Of Applying For Employment

The ALJ also erroneously concluded that, "Brown as an applicant for employment with the Company, became an employee within the meaning of the Act when he filled out his application for employment." (Union Appx. V. I, 6 at 8). The ALJ offered no legal authority for this conclusion. As discussed, although it may make sense for applicants to be considered employees under the Act for purposes of 8(a)(3) or 8(a)(4) discrimination claims, it makes no sense to consider them employees in an 8(a)(5) case like this one.

Applicants have no community of interest with bargaining unit employees because they are not paid wages, do not receive benefits and have no terms or conditions of employment because they do not work. Like the retirees in Pittsburgh Plate Glass Co., 404 U.S. 157, they simply lack a significant connection with bargaining unit members to be considered an employee of ABBP (as opposed to an employee generally as a member of the working class). In fact, applicants may never be hired. Absent discrimination in hiring, which Section 2(3) of the Act covers, it is difficult to fathom how applicants can be considered employees in this situation.

In Star Tribune, 295 NLRB at 543, the Board held that where (1) no hiring hall intermittent employment situation is involved, or (2) where a term of employment does not have a direct effect on current employees by setting job priority standards with respect to future employment, there is no obligation to bargain. Id. at 546-47. The Board also stated that a duty to bargain existed if medical screening could result in the termination of new employees after they are hired. Lockheed Shipbuilding Co., 278 NLRB 18 (1986) (Lockheed II). The same result was reached in Utility Vault Co., 345 NLRB at 79, discussed supra, where an un-bargained dispute resolution procedure was applied to existing employees. None of these situations exists here. The evidence is that ABBP's DRP has never been applied to Jacksonville Brewery's traditional bargaining unit members. Union Appx. V. II, Tr. 93, 94. Relying on Pittsburgh Plate Glass, the Board in Star Tribune

concluded that applicants are not bargaining unit "employees" in an 8(a)(5) case.[28] They are not here either and, therefore, the ALJ's conclusion that Brown's status as an applicant made him an employee is inconsistent with Board law and should not be adopted. Id. at 546.

*      *      *

As a result, even if the Petition Clause defense was not at issue in this case, for the reasons discussed herein, this Court should direct the Board to reverse the ALJ's decision on these additional grounds.

## XI.    CONCLUSION

Based upon the foregoing, the Board's decision was supported by controlling precedent. As a result, ABBP respectfully requests that this Court deny Local 947's Petition for Review.

Respectfully submitted this 20th day of December, 2019.

<em>(Signature on following page)</em>

---

[28] An obligation to bargain extends only to "terms and conditions of employment" of the employer's employees in the "unit appropriate for such purposes" that the union represents. Star Tribune, 295 NLRB at 546, citing Pittsburgh Plate Glass, 404 U.S. at 164.

41

By:   */s/ Jonathan J. Spitz*
Jonathan J. Spitz
Georgia Bar No. 672360
Daniel D. Schudroff
New York Bar No. 4665345
JACKSON LEWIS P.C.
171 17th St., Suite 1200
Atlanta, Georgia 30363
Telephone:  (404) 525-8200
Facsimile:  (404) 525-1173
spitzj@jacksonlewis.com
schudroffd@jacksonlewis.com

Counsel for Intervenor Anheuser-Busch Brewing Properties, LLC

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

I certify that the foregoing Brief of Intervenor Anheuser-Busch Brewing Properties, LLC complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,551 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

I certify that the foregoing Brief of Intervenor Anheuser-Busch Brewing Properties, LLC complies with the typeface requirements of Fed. R. Civ. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

By:    */s/ Jonathan J. Spitz*
       Jonathan J. Spitz
       Georgia Bar No. 672360

43

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2019, I caused to be served a true and correct copy of the within and foregoing **BRIEF OF INTERVENOR ANHEUSER-BUSCH BREWING PROPERTIES, LLC** via the Court's electronic case filing system which will automatically serve the following counsel of record:

David Habenstreit
Kira Dellinger Vol
Eric Weitz
National Labor Relations Board,
Appellate Court Branch
1015 Half St., SE
Washington, DC 20570
David.Habenstreit@nlrb.gov
Kira.Vol@nlrb.gov
Eric.Weitz@nlrb.gov

Tobe Lev
Richard Siwica
Egan, Lev, Lindstrom & Siwica, P.A.
Post Office Box 2231
Orlando, Florida 32802
tlev@eganlev.com

Jeffrey Hale Klink
Jeffrey H. Klink, PA
8916 S MOBLEY RD
TAMPA, FL 33626-1509
jhklink@gmail.com

I hereby certify that on December 20, 2019, I caused to be served a true and correct copy of the within and foregoing **BRIEF OF INTERVENOR**

44

**ANHEUSER-BUSCH BREWING PROPERTIES, LLC** via U.S. Mail, postage

pre-paid, upon the following:

David Cohen
Regional Director
National Labor Relations Board
201 E. Kennedy Blvd., Suite 530
Tampa, FL 33602
dcohen@nlrb.gov

By:    */s/ Jonathan J. Spitz*
Jonathan J. Spitz
Georgia Bar No. 672360